## In re MYERS.

### (District Court, E. D. Pennsylvania.   June 8, 1900.)

### No. 227.

1. BANKRUPTCY—LANDLORD'S LIEN FOR RENT—PROCEEDS OF LIQUOR LICENSE.
   Under the laws of Pennsylvania (Act June 16, 1836; P. L. 777), which give a landlord a lien on goods and chattels being in or upon any messuage and liable to distress of the landlord, a landlord is not entitled to priority of payment of rent due from a bankrupt out of the proceeds of a license to the bankrupt to sell liquors upon the demised premises, such license not being property subject to execution or to distress under the laws of the state.

2. SAME—EXEMPTIONS OF BANKRUPT—PENNSYLVANIA STATUTE.
   A license to sell liquors not being property subject to seizure and sale on execution under the laws of Pennsylvania, a bankrupt resident in that state is not entitled to claim the amount of his statutory exemption from the proceeds of the sale of such a license held by him, under Bankr. Act 1898, § 6, allowing the exemptions prescribed by the state laws, the exemption given by the state statute (Act April 9, 1849; P. L. 533) being only with respect to property subject to levy and sale on execution.

In Bankruptcy.   On certificate by referee concerning allowance of landlord's claim for rent, and of the bankrupt's claim for exemption. The opinion of the referee is as follows (MASON, Referee):

The bankrupt filed his petition in bankruptcy July 27, 1899, setting forth in Schedule B6 that he had "a retail liquor license for 40 South Sixth street, Philadelphia, which he is advised is a license personal, and not an asset of his business"; and under Schedule A1(4), other debts having priority, "McDowell estate, care of Guarantee Trust & Safe-Deposit Company," "rent of 40 S. 6th street, $800"; and under Schedule B5, property claimed to be exempted by state laws, "$300 worth, under the act of 1849 of Penna."

On September 7, 1899, an appraisement of the bankrupt's estate, consisting of liquors and fixtures at 40 South Sixth street, aggregating $127 (no valuation being placed upon the license), was made.

On December 15, 1899, the said fixtures and liquors were set apart by the trustee to the bankrupt at the said valuation of $127, the bankrupt remaining on the premises and continuing the business of retail liquor selling.

Subsequently, the rights of a trustee as to a liquor license having been determined by the court in Re Becker, 2 Nat. Bankr. N. 245, 98 Fed. 407, an appraisement of the license was made in the sum of $1,500, and on February 9, 1900, all the right, title, and interest of the bankrupt in and to a license to sell liquors at retail at 40 South Sixth street, in the city of Philadelphia, was sold by the trustee at public auction for the sum of $2,700.

On March 19, 1900, the Guarantee Trust & Safe-Deposit Company, trustee under the will of M. E. McDowell, deceased, filed a deposition for proof of its claim for rent in the sum of $1,150, and subsequently an amendment setting forth the amount due at the time of the filing of the petition in bankruptcy as $850.

In the first deposition priority of payment from the fund in the hands of the trustee was claimed. This claim has also been urged by counsel at the meeting of creditors held to consider the trustee's account; and the bankrupt has also claimed that out of the moneys, the proceeds of the license, he be allowed the sum of $173, to make up the amount of his exemption to $300, as claimed in the schedules.

1. The claim of a landlord to priority of payment was considered in Re Gerson, 1 Nat. Bankr. N. 315, and was based upon the provision of the act of assembly of Pennsylvania of June 16, 1836 (P. L. 777), providing that "the goods and chattels being in or upon any messuage," "taken by virtue of an execution and liable to distress of the landlord, shall be liable for the payment

of any sums of money due for rent at the time of taking such goods in execution."

That the license in .question constituted such goods and chattels, "liable to distress of the landlord," is a proposition for which no authority has been cited, and which the referee is of the opinion cannot be sustained; and he therefore disallows the claim of priority.

2. As to the bankrupt's claim for a portion of the proceeds of the sale of the license as part of his exemption, it is to be observed that no specific exemption of property (as was provided by the bankruptcy act of 1867) is given by the bankruptcy act of July 1, 1898. The only provision relative to the subject is in section 6, which is as follows:

"This act shall not·affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months, or a greater portion thereof, immediately preceding the filing of the petition."

By the act of assembly of Pennsylvania of April 9, 1849 (P. L. 533), it is provided that "in lieu of the property now exempt by law from levy and sale on execution issued upon any judgment obtained upon contract and distress for rent, property to the value of $300, exclusive of all wearing apparel of the defendant and his family, and all Bibles and school books in use in the family (which shall remain exempt as heretofore), and no more, owned by or in possession of any debtor, shall be exempt from levy and sale on execution or by distress for rent."

Provision is made for the appraisement of such property, the setting aside of real estate of this value, or if no division can be made, where the real estate is of greater value than $300, for the payment out of the proceeds of the sale of the whole.

By the act of April 8, 1859 (P. L. 425), the debtor may elect to retain as exemption "out of any·bank notes, money, stocks, judgments or other indebtedness, to such persons." By subsequent acts provisions are made for exemption of sewing machines, pianos, melodeons and organs.

It is obvious therefore that, the exemption given by the first-mentioned act being only with respect to property liable to levy and sale on execution, unless the license in question is such property there can be no exemption thereof under the bankruptcy act. No case determining this precise question has been cited. The nearest analogy would seem to be a patent right, with respect to which it was held by the court of common pleas No. 4 of Philadelphia, in the case of Harrington v. Cambridge, 14 Wkly. Notes Cas. 456, that it cannot be taken in execution under fi. fa., Thayer, P. J., saying: "I have never heard of selling a man's right, title, and interest in a patent under a fi. fa. It required an act of assembly to·effect the sale of stocks in that manner. The decision of the supreme court of the United States is against the plaintiff. In such a case as this, the decision of that tribunal is of the highest authority."

In Ager v. Murray (1881) 105 U. S. 126, 26 L. Ed. 942, where it was held that a patent right might be subjected by a bill in equity to the payment of a judgment debt of the patentee, it was said that, while it might pass by an assignment in bankruptcy, it could not be seized and sold under a fieri facias, Mr. Justice Gray saying (page 129, 105 U. S., and page 943, 26 L. Ed.): "It has been said by an English text-writer that 'a patent right may be seized and sold in execution by the sheriff under a fieri facias, being in the nature of a personal chattel.' Webst. Pat. 23. We are not aware of any instance in which such a course has been judicially approved." "But it is within the general jurisdiction of a court in chancery to assist a judgment creditor to reach and apply to the payment of his debt any property of the judgment debtor which by reason of its nature only, and not by reason of any positive rule exempting it from liability for debt, cannot be taken on execution at law; as in the case of trust property in which the judgment debtor has the entire beneficial interest, of shares in a corporation, or of choses in action."

Another provision of the law of Pennsylvania which seems to come most appropriately under the category of "exemptions which may be prescribed by the state laws" is to be found in the act of assembly of May 4, 1864 (P. L.

762): "Any assignor under whose assignment in trust, for the benefit of creditors, either by general words or particular description, there have been transferred any articles of household furniture, or things of domestic use, may, after the appraisement thereof, apply to the court of common pleas of the proper county, to have set aside, for the use of the said assignor and family, any of the said articles and things, not exceeding in value, at the appraisement thereof, three hundred dollars; and the court may, if no cause be shown to the contrary, after due notice to creditors, order that the same be released from the assigned estate, and handed to the assignor."

As an assignment for the benefit of creditors is the nearest analogy to proceedings in bankruptcy, the exemptions therefrom being thus limited to articles of household furniture or things of domestic use, such exemptions evidently do not embrace the proceeds of the sale of a liquor license.

It is to be remarked that there is not annexed to the word "exemptions" in the act of 1898 the definitive clauses found in the act of March 2, 1867, where, in addition to household and kitchen furniture to the value of $500, the property excluded was that "exempted from levy and sale upon execution or other process, or order of any court, to an amount not exceeding that allowed by such state exemption laws in force in the year 1864."

While, therefore, the provisions of the act of May 4, 1864, would seem to be peculiarly relative, they are not exclusively definitive of the term "exemptions," which has in the petitions in this judicial district, as the referee believes, been invariably referred to the act of April 9, 1849.

Under the act of 1867, in Re Bennett (Sept., 1863) 2 N. B. R. 181 (Quarto, 66), Fed. Cas. No. 1,315; Re Erben, Id.,—it was held that under the provisions of the fourteenth section of the bankruptcy law of March 2, 1867, referred to, a vested expectant interest of the bankrupt in a sum of money payable at his own death or at the death of another person may, in Pennsylvania, be set apart for the use of the bankrupt. The interest referred to in Bennett's Case was that in the proceeds of the sale of land, one-third of which had been invested to secure a widow's life interest; and in Erben's Case, annual premiums on a life insurance, payable to the bankrupt's wife, which the bankrupt had paid after insolvency. Upon the hearing of these cases in court, Cadwalader, J., said that: "In case of a similar expectant interest in corporeal property, which interest could be levied upon and sold on execution, he would have had no doubt of the applicability of the exemption laws of the state. But the expectant interests here in question could not be sold under an execution. They could not be reached by a creditor in a court of the state, otherwise than by way of attachment execution,—a proceeding under which there could be no sale, in the strict sense of the word. In such a case the question of exemption depended, under the act of congress, altogether upon the effect of the legislation of the state, or depended upon the meaning of words, which was to be determined according to the effect attributable to them by the state courts under such legislation. He therefore asked the assistance of two of the judges of the state (Judge Strong, of the supreme court, and Judge Hare, president of the district court of the city and county of Philadelphia), who expressed their concurrent opinion that the interests in question were included in the meaning of the words, "property exempted from levy and sale on execution or other processes or order of the court by the laws of the state," and would be exempted under these laws to an amount not exceeding $300 in each case.

It appears, however, to have been conceded that these interests might have been reached by an attachment execution, and this has been held to be an execution within the act of 1849. Strouse's Ex'r v. Becker (1863) 44 Pa. St. 206.

As, therefore, the property in a liquor license cannot be taken in execution in Pennsylvania, within the purview of the act of 1849, the referee is of the opinion that the bankrupt's claim for this additional exemption must be disallowed.

Clinton O. Mayer, for bankrupt.
David Mandel, Jr., for creditors.

McPHERSON, District Judge. I agree with the learned referee in his disposition of the bankrupt's claim for exemption, and of the land-lord's claim to priority. Nothing need be added to the referee's opinion, except the citation of In re Ulrich, 6 Pa. Dist. R. 408, in which it was decided by one of the common pleas courts of the state that a license to sell liquor cannot be levied upon and sold by the sheriff; and Moss' Appeal, 35 Pa. St. 162, and Wickey v. Eyster, 58 Pa. St. 501, in which the supreme court held that the landlord's claim to be paid out of the proceeds of sale depends upon his power to distrain the goods. A license can no more be distrained than taken in execution.

The disallowance of these claims is accordingly approved.