### In re MITCHELL.

(District Court, D. Delaware. April 8, 1902.)

No. 50.

1. BANKRUPTCY—LANDLORD'S LIEN.

By virtue of the statutes of Delaware, a landlord has, as against creditors of his tenant, a lien, charge or preference on the goods and chattels of his tenant on the demised premises for rent growing due for the balance of the renting year, and this right of the landlord will be recognized and enforced as against the proceeds of such goods and chattels when sold by a trustee in proceedings in bankruptcy against the tenant.

(Syllabus by the Court.)

In Bankruptcy.

Christopher L. Ward, for trustee.

Anthony Higgins, for creditors.

BRADFORD, District Judge. In this case the executors of J. Taylor Gause filed with the referee in bankruptcy for New Castle county December 27, 1901, a claim against the estate of the bankrupt, Samuel Mitchell, for rent for certain demised premises situate in said county, from September 25, 1901, to March 25, 1902, amounting to $762.50; alleging that said sum was entitled to priority under the laws of Delaware, that no part of it had been paid and that no security had been received for the same. Mitchell was on his own petition adjudged a bankrupt December 9, 1901. The trustee in bankruptcy by petition filed with the referee February 22, 1902, excepted to a portion of the claim, and thereafter on the same day the referee, having certified that he was indirectly interested in the subject-matter of the petition, it together with the claim was, pursuant to section 43 of the bankruptcy act, filed in this court. Thereafter by leave of the court

¶ 1. See Bankruptcy, vol. 6, Cent. Dig. § 290.

the trustee filed an amended petition modifying his original exception to the claim. The parties through their respective attorneys have filed a statement of facts, as follows:

"Statement of Facts.

1. On December 9th, A. D. 1901, Samuel Mitchell, the bankrupt, was the tenant of the premises, 219 Market Street in the City of Wilmington, State of Delaware, owned by estate of J. Taylor Gause, under a lease, copy of which is annexed.

2. On December 9th, A. D. 1901, the said Samuel Mitchell filed his voluntary petition in bankruptcy. The same day he was adjudicatéd a bankrupt and the case was referred to Arthur W. Spruance, Esq., referee in bankruptcy, and on December 23rd, A. D. 1901, Edmund S. Hellings, Esq., was appointed trustee in bankruptcy.

3. The said trustee occupied the said premises first as a place of storage of the assets of the bankrupt and afterwards for the purpose of selling said assets, until the fifteenth day of February, A. D. 1902, when he ceased to occupy the said premises and delivered the keys thereof at the office of Anthony Higgins, Esq., attorney of record for said estate of J. Taylor Gause, at the same time by letter, a copy of which is attached to this agreed statement of facts and made a part thereof, expressing a desire to surrender possession of said premises to said estate of J. Taylor Gause, offering to pay for the use and occupation of the premises from the day of filing of said petition in bankruptcy to said 15th day of February, at the rate at which the premises were rented to said bankrupt, and as to the balance of the rent from said 15th day of February to March 25th, A. D. 1902, expressly disclaiming all responsibility and liability, and since said 15th day of February, the said trustee has not had the use or occupation of said premises.

4. The said premises have not been rented to any tenant. There has been no acceptance of the surrender by the landlord or his agents and no such dealing with the premises as would amount to a surrender in law.

5. Rent is paid up to the twenty fifth day of September, A. D. 1901, and nothing beyond that date.

6. There were on demised premises assets of the bankrupt amply sufficient to satisfy the landlord's claim for rent and not subject to any exceptions under the laws of the State of Delaware."

The lease referred to in the agreed statement of facts is as follows:

"This agreement made this eighth day of January, one thousand nine hundred and one, witnesseth, that Samuel Mitchell of the City of Wilmington, New Castle County and State of Delaware, has rented from H. T. Gause and H. W. Gause, executors under the will of J. Taylor Gause, deceased, of the said City of Wilmington, a certain piece or parcel of land situate in the said City of Wilmington, known as No. 219 Market Street, together with a four story messuage thereon erected, for the term of one year from the twenty fifth day of March, 1901, at the rent of fifteen hundred and twenty five ($1525) dollars per annum, to be paid in monthly portions in advance of one hundred and twenty seven dollars and eight cents each, and the said Samuel Mitchell doth hereby, for himself, his heirs, executors and administrators, covenant and promise to pay to the said H. T. Gause and H. W. Gause, executors as aforesaid, or their assigns, the said rent in the proportions aforesaid, and he the said Samuel Mitchell, his executors and administrators, shall and will not at any time during the said term, let or demise, or in any way dispose of, the hereby demised premises, or any part thereof, for all or any part of the term hereby granted, to any person or persons whatever without the consent and approbation in writing of the said H. T. Gause and H. W. Gause, executors as aforesaid, or their assigns, first had for that purpose, and at the expiration of the said term, yield up and surrender the possession of said premises with the appurtenances unto the said H. T. Gause and H. W. Gause, executors as aforesaid, or their assigns, in the same good order and condition as the same now are, reasonable

wear and tear thereof and accidents happening by fire or other casualties, excepted.

In witness whereof, the said Samuel Mitchell and the said H. T. Gause and H. W. Gause, executors as aforesaid, have hereunto set their hands and seals, the eighth day of January one thousand nine hundred and one.

|  |  |
|---|---|
| Samuel Mitchell, | (Seal) |
| H. T. Gause, | (Seal) |
| H. W. Gause, | (Seal) |

Executors under will of J. Taylor Gause, deceased.

Sealed and delivered in the presence of
Henderson Wier as to Samuel Mitchell,
F. H. Megaw, as to H. T. and H. W. Gause."

It is not necessary to quote from the letter referred to in the statement of facts, as it is admitted that there was no surrender of the premises by the tenant to his landlords. The trustee in his original exception to the claim alleges that "only a portion of said whole amount, to wit, the sum of three hundred seventeen $^{70}/_{100}$ dollars for rent due September 25th, 1901, to December 9th, 1901, is entitled to priority under the provisions of the bankruptcy act," and prays that an order be made disallowing said claim as filed, "reducing the same to the sum of three hundred seventeen $^{70}/_{100}$ dollars." In his modified exception the trustee claims that "only a portion of said whole amount, to wit, the sum of two hundred fifty four $^{16}/_{100}$ dollars for rent due September 25th, 1901, to November 25th, 1901, is entitled to priority" under the provisions of said act, and prays for a disallowance of "the said claim as filed" and "a reduction of the same to the sum of two hundred fifty four $^{16}/_{100}$ dollars." By the terms of the lease the rent was to be paid in monthly instalments of $127.08 each in advance. It is admitted in the statement of facts that the rent was "paid up to the twenty-fifth day of September, A. D. 1901, and nothing beyond that date." Being payable in advance, the rent to October 25, 1901, was due and payable September 25, 1901; the rent to November 25, 1901, was due and payable October 25, 1901; and the rent to December 25, 1901, was due and payable November 25, 1901; the aggregate being $381.24. This amount represents an indebtedness or money demand which under the covenants of the lease matured and was collectible by action or distress prior to the adjudication, December 9, 1901. Sections 8, 12, c. 120, Rev. Code Del. There can be no question that it was provable against the estate of the bankrupt. The real controversy turns on the questions whether the remaining instalments of rent payable December 25, 1901, January 25, 1902, and February 25, 1902, were so provable, and, if so, whether they were entitled to priority. By section 1, (11) of the bankruptcy act, " 'debt' shall include any debt, demand, or claim provable in bankruptcy." Section 63 provides that debts of a bankrupt which may be proved against the estate are

"(1) A fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date, or with a rebate of interest upon such as were not then payable and did not bear interest.
*       *       *       *       *       *       *       *       *       *       *       *       *
(4) Founded upon an open account, or upon a contract express or implied."

Section 64, in providing for priority of debts, includes "debts owing to any person who by the laws of the states or the United States is entitled to priority." While this section places certain other debts higher in the scale of priority than those above mentioned, this fact does not appear to have any pertinency to the case in hand, as no debts higher in such scale are set up or referred to. It is urged with much ability and ingenuity by the counsel for the trustee that the claim, in so far as it relates to rent, not in arrear, but growing due, does not disclose a debt or demand provable in bankruptcy. To sustain this contention it must appear that under the laws of Delaware a money rent growing due for the balance of the renting year is not a debt or demand, or that, if it is, it is not embraced in sub-divisions (1) or (4) of section 63 of the Bankruptcy Act. But I have no doubt that under the statutes and judicial decisions in Delaware a money rent, though not in arrear, but growing due for the balance of the renting year, is a debt or demand. It is true that, except as provided to the contrary in section 65, c. 120, Rev. Code Del., hereinafter quoted, only rent in arrear is the subject of a distress. Sections 19, 37, c. 120. But claims for rent growing due are, within certain limits, peculiarly favored in Delaware. Sections 60 and 61 of the same chapter are as follows:

"Sec. 60. If goods and chattels of a tenant being upon premises held by him by demise under a rent of money, be seized by virtue of any process of execution, attachment, or sequestration, the said goods and chattels shall be liable for one year's rent of said premises, in arrear, or growing due, at the time of said seizure, in preference to such process; accordingly the landlord shall be paid such rent (not exceeding one year's rent) out of the proceeds of the sale of such goods and chattels before anything shall be applicable to such process.

Sec. 61. If the landlord before the seizure of the goods and chattels of his tenant by virtue of such process as aforesaid, have distrained such goods and chattels for rent in arrear, such distress, or the levying of the rent in arrear under it, shall not preclude him from the preference given by the foregoing section."

The "preference given by the foregoing section" necessarily implies a debt or demand to which the preference attaches, and that debt or demand is "one year's rent of said premises in arrear, or growing due, at the time of said seizure"; and by the terms of section 60 such rent, whether in arrear or growing due, is paid immediately out of the proceeds of sale, in preference to "any process of execution, attachment, or sequestration." It is inadmissible to assume that a seizure of the goods and chattels of the tenant by virtue of such process creates the landlord's claim for rent growing due. That claim grows out of the lease; but by virtue of section 60 such claim immediately matures and becomes payable as against and in preference to such process. Sections 62, 64 and 65 of the same chapter are as follows:

"Sec. 62. If the grain, or other produce, growing or being upon premises held by a tenant by demise under a rent of a quantity, or share, of grain or other produce, be seized by virtue of any process of execution, attachment, or sequestration, such grain or produce shall be liable for the year's, rent proper to be rendered thereout in preference to such process; that is to say, the Indian corn shall be liable for the quantity, or share, of Indian corn to be rendered as rent, the wheat shall be liable for the quantity, or share, of wheat to be rendered as rent, and so of the other produce; this preference extending only to the rent for one year. Such grain or produce, if sold in

pursuance of being so seized, shall be sold subject to the rent, and the purchaser shall be liable for said rent and the delivery thereof according to the tenant's contract, and for the proper cultivation and care of the crop.

Sec. 64. It shall not be lawful to remove grain, or produce, sold as aforesaid, from the demised premises, without either paying the rent proper to be rendered thereout or giving or tendering to the landlord, or person entitled to such rent good security to pay the same when due.

Sec. 65. In case of a removal contrary to the foregoing section, the landlord, or person entitled to rent, may immediately follow and distrain the grain, or produce, removed, and may proceed in the same manner as if the rent had been in arrear at the time of removal."

The last quoted sections, while not relating to a money rent, disclose a legislative intent that rent growing due for the balance of the renting year is a debt or demand. It is made unlawful to remove grain, or produce, sold as aforesaid, from the demised premises without paying the rent or "giving or tendering to the landlord, or person entitled to said rent, good security to pay the same when due," and in case of a forbidden removal the landlord "may immediately follow and distrain the grain, or produce, removed, and may proceed in the same manner as if the rent had been in arrear at the time of removal." Nor does a claim for growing money rent consist solely of a preference or lien on goods and chattels liable to distress, or on any particular property. It is a claim in personam, and, while entitled to a preference, priority or lien on goods and chattels liable to a distress, exists independently of them. Section 67 of chapter 120 is as follows:

"Sec. 67. Rent in arrear, or growing due, may be attached. If the rent attached be not due at the return of the attachment, the court may render judgment upon such terms, and make such order, as shall be deemed proper to secure the parties and carry the attachment into effect."

This section recognizes that rent growing due is a debt or demand in personam, and that by execution on a judgment obtained for it any property of the tenant may be taken to satisfy the claim. So sections 52, 53, 54 and 57 regard rent growing due as a debt or claim against the tenant in personam. They are as follows:

"Sec. 52. Upon affidavit made by a landlord, or any credible person for him, and filed in the office of the prothonotary, (or any justice of the peace,) of the county wherein the demised premises are situated, stating the rent which his tenant is to pay, or render, and when it will be due, and that he does on good grounds believe that the tenant intends to remove his effects from the county, or otherwise dispose of the same, and will so remove or dispose of the same before the rent becomes due, so as to defeat a distress for said rent, a writ of attachment shall be issued out of said superior court, returnable to the next term thereof, directed to the sheriff of the county, (or out of the office of any justice of the peace of the county, directed to any constable thereof, returnable forthwith), against the goods and chattels, rights and credits of such tenant and for summoning the garnishees.

Sec. 53. If the tenant shall give to the landlord bond with sufficient surety, to be approved by the officer serving the writ, before the return thereof, or by the court at the term of the return, (or by the justice of the peace, when the same shall be returned to his office,) to pay the rent when due, with the costs of the attachment, the goods and garnishees shall be discharged.

Sec. 54. If bond, as required by the foregoing section, be not given, the court, (or justice of the peace,) shall make an order for the sale of the goods and chattels attached, or so much thereof as shall be necessary to pay said rent, with the costs, and shall render judgment against every garnishee, summoned upon the attachment, on his answer confessing goods,

money, rights, or credits in his hands, or upon the verdict of a jury against him, if required to plead, as in other proceedings by attachment.

Sec. 57. The residue of the goods, or money, after satisfying the rent and costs, shall be restored, or paid, to the tenant without delay, or otherwise applied according to law."

That a money rent growing due for the balance of the renting year is a debt or demand in personam wholly independent of the existence of any goods and chattels liable to a distress is further made evident by section 58 of the same chapter and the section therein referred to. Section 58 is as follows:

"Sec. 58. If a landlord, or any credible person for him, shall, in manner provided in section 52, make oath, or affirmation, stating the rent which his tenant is to pay, or render, and when it will be due, and that he does, on good grounds, believe that the tenant intends to leave the state, and will depart from the same before the rent will become due, and that there are not goods and chattels, rights and credits of said tenant, that can be attached, sufficient to secure said rent, and that said tenant does not intend to make provision for the payment of the rent, proceedings shall be had against the said tenant according to section 14 of chapter 103."

Section 14 of chapter 103, so far as pertinent to the point under discussion, is as follows:

"Sec. 14. If any person be indebted to an inhabitant of this state, and the day of payment is not arrived, the creditor, or any one for him, on filing with the prothonotary an affidavit that the defendant is indebted to him in a sum exceeding fifty dollars, the time for payment of which is not yet come, and that he, on good grounds, believes that said defendant is about to leave the state, and to remove his effects, and has refused to give better security for the debt, may issue a capias against such debtor, and have him arrested; and such debtor, shall, on the return of the writ, be obliged to give better security for the payment of such debt, if the court, on hearing, shall see fit so to order, and he shall pay the costs."

Here, it will be perceived, the claim of the landlord for money rent growing due is put on the same footing with any other money claim in personam payable at a future time. By section 59, c. 120, it is provided that "the foregoing provisions respecting attachment for rent, shall not extend to more than one year's rent." The provisions referred to relate to rent, not in arrear, but growing due. Section 25, c. 89, Rev. Code Del., which treats of the settlement of the personal estate of decedents, provides, among other things, as follows:

"Sec. 25. Executors and administrators shall pay demands against the deceased in the following order: * * * Fourth: Rent for not exceeding one year; and this, at the election of the party entitled, may be of rent in arrear, or rent growing due."

By virtue of the foregoing statutory provisions it is clear that money rent growing due for the balance of the renting year is in Delaware a debt or demand in personam primarily payable in futuro; that such rent may be attached by a creditor of the landlord; that the landlord may require security for its payment; that it is provable against the estate of a deceased tenant; and that it immediately matures and becomes payable out of the proceeds of sale of goods and chattels of the tenant on the demised premises when seized by virtue of any process of execution, attachment or sequestration. Such being the nature and incidents of money rent growing due for the balance of the renting

year, the question is whether it is or not a "fixed liability," within the meaning of section 63a (1) of the bankruptcy act, or a debt or demand founded "upon a contract express or implied," within the meaning of subdivision (4) of the same section. The laws of Delaware applicable to the operation or effect of the lease entered into and became part of it. If the rent growing due came within either of these provisions, it was provable in bankruptcy. The possibility that after December 9, 1901, the date of the adjudication, the demised premises might, before the expiration of the renting year, have been destroyed, or that the lease, if bankruptcy had not intervened, might have been surrendered, forfeited or sold on execution before the expiration of the year, could not impair or in any manner affect the right of the landlord to receive all such rent as a debt or demand, evidenced by an instrument in writing or founded upon an express contract, out of the proceeds of sale of the tenant's goods and chattels on the demised premises in preference to any process of execution, attachment or sequestration. The tenant absolutely and without condition covenanted in the lease to pay rent in the stipulated instalments. In Peterson v. Edmonson, 5 Har. (Del.) 378, the court said:

"The accidental destruction of a house under demise, is not an eviction, nor does it excuse the payment of the rent. It is a hardship, but it is the misfortune of the tenant during his term, as well as of the landlord after it. If no stipulation be made in the lease, to excuse the payment of rent in case of tempest or fire, the tenant is bound by his contract, and he is obliged to pay the rent."

In Delaware a landlord's claim for rent growing due is, as before stated, highly favored, and is carefully guarded under the statutes and decisions. In Shuster v. Robinson, 3 Har. (Del.) 50, it was held that goods moved on demised premises after execution delivered to the sheriff, but before actual levy, are subject to rent growing due in preference to the execution. In Biddle v. Biddle, 3 Har. (Del.) 539, it was held that, where goods of a tenant are taken in execution after a distress levied, the landlord may complete his distress, and also claim the accruing year's rent in preference to the execution creditor. In Hopkins v. Simpson, 3 Houst. 90, 92, the court said:

"The landlord is amply and abundantly provided with all the means and remedies necessary to secure and preserve this preference, as against any and all execution creditors of his tenant in any event whatsoever."

In Ford v. Clewell, 9 Houst. 179, 31 Atl. 715, it was held that the landlord's right to have the proceeds of sale of goods and chattels of his tenant applied to the payment of the year's rent is superior to the lien of a chattel mortgage given before the beginning of the tenancy and before such goods and chattels were moved on the demised premises; the report of the case stating that "the court held the lien of the landlord for rent to be superior to the chattel mortgage." Nor does the fact that the unexpired term of the lease is sold to the landlord under process of execution at the time of the sale under that process of the goods and chattels of the tenant on the demised premises, although depriving the tenant of the possession of such premises during such unexpired term, in any manner affect the right of the landlord to the rent growing due for the balance of the renting year. McIntire

v. Barkley, 5 Houst. 145. No decision in Delaware has been cited by counsel, nor am I aware of any, that holds that the right of a landlord, as against process of execution, attachment or sequestration against the goods and chattels of his tenant, to a present payment of money rent growing due, is affected by the possibility that the term may be surrendered, aliened or otherwise cease, or the tenant dispossessed of the demised premises, before the expiration of the renting year. The language of the statute, section 60, c. 120, is broad, unambiguous and absolute. In State v. Vandever, 2 Har. (Del.) 397, the court said:

"There is an important distinction between a money rent and a grain rent or share. In either case the landlord is entitled to be paid one full year's rent. If it be a money rent, and the goods of the tenant be sold by the Sheriff, he is bound to pay the landlord his rent out of the proceeds of the sale. * * * The landlord is entitled to the rent either in arrear or growing due; not exceeding one year's rent."

And in McIntire v. Barkley, supra:

"The words of the statute are general and comprehensive and without any qualification or exception."

Section 60, c. 120, provides that in case of seizure under process, as therein mentioned, "the said goods and chattels shall be liable for one year's rent of said premises, in arrear, or growing due, at the time of said seizure, in preference to such process," which shall be paid "out of the proceeds of the sale of such goods and chattels before anything shall be applicable to such process." Aside from a distress, certainly "any process of execution, attachment, or sequestration" includes all the means or process by which creditors can proceed against the goods and chattels of a tenant on the demised premises to enforce payment of their demands. As has been shown, the law treats the claim of the landlord for money rent growing due for the balance of the renting year as a debt or demand in personam. And it appears that it is the clear legislative policy and intent, gathered from the various sections of the state statutes quoted, broadly to protect the claim of the landlord for such rent, though primarily payable in futuro, from destruction or impairment in any manner by the death, fraud or inability of the tenant, or the claims of his other creditors; and, in part accomplishment of that end, to render such rent payable in præsenti out of the tenant's goods and chattels on the demised premises whenever necessary to secure such rent as against other creditors of the tenant. Section 60 must be read in the light of these considerations and, when so read, recognizes the right of the landlord, wholly independently of the institution of proceedings in bankruptcy, to receive money rent growing due for the balance of the renting year, so far as the tenant's goods and chattels on the demised premises are sufficient to pay the same, in preference to and to the exclusion of any of the tenant's other creditors. The right of the landlord, existing by law prior to the adjudication in this case and requiring no act on his part for its creation or perfection is, in my opinion, recognized and respected by the bankruptcy act. It is his right to be paid his accruing rent out of the proceeds of the goods and chattels in question which belonged to the tenant until they passed to the trustee in bankruptcy, representing the creditors, as a debt or demand payable in præsenti.

As was said by the court in Longstreth v. Pennock, 20 Wall. 575, 22 L. Ed. 451, with reference to an assignee in bankruptcy under the act of 1867,—a statement equally applicable to a trustee under the existing act:

"The assignee acquired his title to the movable property found on the demised premises, subject to the rights of all other persons."

This right is entitled to recognition by the court in bankruptcy either as existing independently of the proceedings in bankruptcy, or as coming within the equity of the Delaware statute. It was argued by the counsel for the trustee, though little stress was laid on the contention, that as section 19 of the act of 1867 provided for an apportionment of accruing rent at the time of the filing of the petition, and no provision for apportionment is contained in the existing act, no claim for rent which did not accrue and become payable before the adjudication is a provable debt or demand. It is immaterial to the determination of this case whether section 19 of the former act served, on the one hand, to restrict or, on the other, to enlarge the right of the landlord to claim rent in bankruptcy proceedings. The case must be decided under the existing act, and, as above stated, the claim of the landlord must, under the peculiar provisions of the Delaware statutes, be treated as a debt or demand payable in præsenti, and as such provable against the estate of the bankrupt. I have no doubt of the priority of the claim under section 64b (5) of the bankruptcy act, as a debt owing to the landlord who by the laws of Delaware is entitled to priority over other creditors of the tenant. Longstreth v. Pennock, 20 Wall. 575, 22 L. Ed. 451; In re Wynne, Fed. Cas. No. 18,117; Austin v. O'Reilly, Fed. Cas. No. 665; In re Trim, Fed. Cas. No. 14,174; In re Appold, Fed. Cas. No. 499; In re McConnell, Fed. Cas. No. 8,712; In re Bowne, Fed. Cas. No. 1,741; In re Hoover (D. C.) 113 Fed. 136; In re Dunham, Fed. Cas. No. 4,145; In re Hoagland, Fed. Cas. No. 6,545; In re Rose, Fed. Cas. No. 12,043; In re Gerson, 1 Nat. Bankr. News, 315; In re Myers (D. C.) 102 Fed. 869, 4 Am. Bankr. R. 536. In Longstreth v. Pennock, supra, the court recognized the right of a landlord to rent as against an assignee in bankruptcy under the act of 1867, although prior to the proceedings in bankruptcy no attempt had been made to collect the same by distress. The statute of Pennsylvania considered in that case provided as follows:

"The goods and chattels being in or upon any messuage, lands, or tenements, which are or shall be demised for life or years or otherwise, taken by virtue of an execution, and liable to the distress of the landlord, shall be liable for the payment of any sums of money due for rent at the time of taking such goods in execution: provided, that such rent shall not exceed one year's rent. After the sale by the officer, of any goods or chattels as aforesaid, he shall first pay out of the proceeds of such sale, the rent so due, and the surplus thereof, if any, he shall apply towards satisfying the judgment mentioned in such execution." Purd. Dig. 1873, p. 879.

The court said:

"Before the commencement of the proceedings in bankruptcy, the defendants in error might have distrained; and it is agreed that the property upon the premises was more than sufficient to satisfy the demand. The statute of Pennsylvania, of June 16th, 1836, provides that where property under such

circumstances is seized and sold under execution, rent due for a period not exceeding one year shall be paid first out of the proceeds of the sale. This case is within the equity of that statute. The question presented is one belonging to the local law of Pennsylvania."

In the case of In re Wynne, supra, Chief Justice Chase held, in the circuit court for the district of Virginia, that under the statutes of that state a landlord had a lien for rent independently of proceedings by distress warrant or attachment. Among other things he said:

"As we understand the bankrupt act, all the rights and all the duties of a bankrupt in respect to whatever property, not expressly excluded from the operation of the act, he may hold under whatever title, whether legal or equitable, and however incumbered, pass to and devolve upon the assignee at the date of filing of the petition in bankruptcy. And all rights thus acquired are to be enforced by process, and all duties thus imposed are to be performed under the superintendence of the national courts. No lien can be acquired or enforced by any proceeding in a state court commenced after petition is filed, though in cases where jurisdiction has been previously acquired by state courts of a suit brought in good faith to enforce a valid lien upon property, such jurisdiction will not be divested. * * * If a lien for rent existed, it was a lien to be discharged by the assignee, and enforced in the United States court of bankruptcy. If it did not exist, it could not be brought into existence by any proceeding whatever. The real question is, were the goods on the premises demised to the bankrupt subject to a lien for rent under the state law when the petition was filed, independently of any proceeding by distress or attachment? Liens are of various descriptions, and may be enforced in different ways; but we think it sufficient to say here, what seems to us well warranted in principle and authority, that whenever the law gives a creditor a right to have a debt satisfied from the proceeds of property, or before the property can be otherwise disposed of, it gives a lien on such property to secure the payment of this debt. And we think that a lien of this sort is given by the 12th section of title 41, c. 128, of the Revised Code of Virginia, adopted in 1860. It expressly prohibits any person having, by deed of trust, mortgage, or otherwise, a lien upon goods of a tenant on demised premises from removing such goods without paying to the landlord the rent due, and securing the rent becoming due, not exceeding one year's rent, and it further requires any officer who may take such goods under legal process to pay out of the proceeds the rent in arrear, and deliver to the landlord sufficient purchasers' bonds for the payment of that becoming due. We cannot doubt that this statute creates a lien in favor of the landlord, and a lien of a high and peculiar character. We have no concern with the policy of this legislation; it is upon the statute book, and the lien it creates must be respected and enforced. * * * Would it not be trifling with the plain sense of words to say that there is a lien under the trust deed and a lien under an execution, but the claim which by law is made superior to either as a charge upon the goods is no lien? * * * It seems to us, therefore, that Haxall & Company had a valid lien for the arrears of rent due and for so much rent to become due under the lease as will make the whole amount secured equal to a year's rent. And we think that this lien is given by the statute independently of proceedings by distress warrant or attachment, which we regard as remedies superseded by the effect and operation of the bankrupt act."

In Austin v. O'Reilly, Fed. Cas. No. 665, Mr. Justice Bradley said:

"This case depends on the question, whether, in the state of Mississippi, a landlord, whose tenant becomes a bankrupt before any attachment has been issued for rent, is entitled to priority of payment over the general creditors. This question must be decided in view of the provisions of the bankrupt law, and the peculiar rights of landlords, in reference to enforcing payment of rent in Mississippi. * * * These provisions show that all liens, except such inchoate ones as arise upon an attachment, are protected by the law. But how do these provisions operate upon the peculiar lien, or right of dis-

tress, given to a landlord for his rent? * * * It is common to call the right a lien, and yet it is not strictly such; for it does not attach to any specific article of property. * * * Still, being commonly called a lien, and being a peculiar right in the nature of a lien, which is greatly relied on as an essential condition of all leases, and the subversion of which would work great injustice, and would in the end operate prejudicially to the interests both of the tenants and their creditors, by inducing landlords to require onerous conditions for their security, the supreme court of the United States, and most of the district and circuit courts, have regarded it as fairly to be classed as a lien within the true intent and meaning of the Bankrupt Act, and have allowed the landlord a priority over the general creditors to the extent of the goods subject to his right of distress. This right of the landlord has been regarded as peculiarly entitled to priority when by statute an execution creditor of the tenant is prohibited from removing the goods until he has paid the landlord's rent, or a reasonable amount (generally a year's rent), which may have accrued. * * * It is true that the supreme court of this state has held that the landlord's right is not a lien; and that a bona fide mortgage or sale by the tenant will displace it. I do not think, however, that these decisions are sufficient to deprive the landlord in bankruptcy proceedings of his just right of priority over the general creditors. They gave credit with the understanding that the landlord's right was superior to theirs  He, therefore, has an equity to be preferred."

In the case of In re Trim, Fed. Cas. No. 14,174, it was held that an assignee in bankruptcy was bound to respect the landlord's lien for rent in South Carolina. Judge Bryan said:

"This lien is not dependent on a distress warrant or an execution. The charge on the property or the proceeds of the property is a charge because by the statute, where there is an execution, the charge is paramount to the levy itself. It ranks the levy. The very fact that it is paramount to the levy proves that it is a lien. * * * The statute creates a lien, not the execution. It creates a charge upon the property which excludes even an execution. The lien, so far from being credited by the execution, ousts it. If it had not a previous existence, how could this be? The property then in the hands of an assignee is in the hands of the law, as much so as if in the possession of the sheriff, and to be disposed of subject to this charge, and against all other liens, the highest possible lien being a levy which is the consummation or execution of an execution."

In the case of In re Appold, Fed. Cas. No. 499, Judge Cadwalader, after referring to the English authorities, said:

"But if these authorities are inapplicable, it does not follow that the so-called lien of a landlord for rent should be wholly disallowed. The proceedings in bankruptcy may then have the effect of a statutory execution, so that the case of the bankrupt's landlord may be within the equity of any laws of the respective states which entitle a landlord to payment out of the proceeds of goods taken in execution."

In the case of In re McConnell, Fed. Cas. No. 8,712, Judge Nixon said:

"The Bankrupt Act makes no provision for a preference in favor of the landlord; but, in its administration, it is undoubtedly the duty of the court to recognize and enforce any lien which he may have by virtue of the state law. In re Wynne, Fed. Cas. No. 18,117. By the fourth section of the act concerning landlords and tenants (Nix. Dig. 490), no goods and chattels are liable to be taken from demised premises by virtue of any execution, attachment, or other process, unless the party at whose suit the process is sued out, before the removal of the goods from the premises, shall pay to the landlord all rent due, not exceeding, however, one year's rent. The warrant by which the marshal seized the goods and chattels in question being a process, the landlord's lien existed at the time of the seizure, and, in

the theory upon which the bankrupt law is administered, still exists upon the fund in court, unless he has done something to waive or avoid his preference."

In the case of In re Bowne, Fed. Cas. No. 1,741, Judge Nixon said:

·"The counsel for the assignee insisted on the argument that the landlord has no lien on his tenant's goods for rent due until after the levy of the distress warrant. This is only true in the sense that he cannot follow the property in the hands of a bona fide purchaser without notice of his claim. It is a general proposition that, whenever the law gives to a creditor the right to have his debt satisfied from the proceeds of property, or before the property can be otherwise disposed of, it gives a lien on such property to secure the payment of the debt."

In the case of In re Hoover (D. C.) 113 Fed. 136, arising under the existing bankruptcy act, Judge. Buffington said with reference to the Pennsylvania statute referred to in Longstreth v. Pennock, supra:

"The bankrupt court having taken possession of this property, thus liable for the rent, its process whereby the same was sold must, for the purposes of this statute, be regarded as an equitable execution. The case is within the equity of the statute."

It is true that in the case just cited a distress warrant had issued before the petition in bankruptcy was filed, but had not then been executed. The issuance of the distress warrant, however, was immaterial to the decision of the case under the doctrine laid down in Longstreth v. Pennock, In re Wynne, and other cases above cited. The words "liable to the distress of the landlord" in the Pennsylvania statute are merely descriptive of the goods and chattels with respect to which the lien or preference of the landlord exists, and do not import that a distress must be made as a condition for the existence of such lien or preference. There can be no doubt, as contended on the part of the trustee, that the debts or demands entitled to priority under section 64b (5), by reason of priority accorded to them by the laws of a state, include only debts or demands provable in bankruptcy, and that in order to sustain the present claim it is necessary that it should appear that it represents a demand under the laws of Delaware so provable. But the debt or demand here is for rent due and growing due, for the payment of which as against other creditors of the tenant and aside from bankruptcy proceedings, the landlord under section 60, c. 120; Rev. Code Del., had a lien, charge, or preference, on the goods and chattels of the tenant on the demised premises; and the section not only creates such lien, charge, or preference, but renders the rent growing due for the balance of the renting year absolutely and without condition payable in præsenti out of the proceeds of such goods and chattels whenever necessary for the protection of the landlord as against the claims of other creditors. This right of the landlord to accruing rent and to a lien, charge, or preference for it, is, without action on his part, or any resort by him to judicial proceedings, created and protected by the law. Such right and priority, existing under the statutes of Delaware, independently of proceedings in bankruptcy, must be recognized and protected by a court of bankruptcy. Further, the claim of the landlord, if viewed in another aspect, must under the doctrine of the foregoing authorities, be treated as within "the equity of the statute." This court has no concern with

the abstract question whether the provisions of section 60 of chapter 120, are wise or unwise; though much might be said to show that they are altogether proper and equitable. That section exists, and the doctrine of liberal construction or equity of the statute is just as applicable to it as to statutory provisions, considered in the decisions under the bankruptcy act of 1867, relating to rent accrued prior to the filing of the petition, where no distress warrant was issued. In fact, it is admitted on the part of the trustee that if the claim for growing rent is provable, it is entitled to priority. Reference was made on the part of the trustee to the case of In re Jefferson (D. C.) 93 Fed. 948. I am by no means satisfied with the reasoning contained in the opinion in that case; but it is enough to say that the statute of Kentucky there considered is materially different from the Delaware statute, in that under the former, in the case of the taking in execution of property on the demised premises, the officer is obliged, out of the proceeds thereof, to "make payment of the rent payable in money, due and to become due, for the year in which the levy is made unless a bond of indemnity be executed." The conditional character of the obligation under the Kentucky statute to make present payment renders the case of In re Jefferson wholly inapplicable as an authority to affect the case now under consideration where the right on the part of the landlord to receive a year's rent is absolute and unconditional. It was conceded in open court and in the statement of facts that there were, at the time of the adjudication, on the demised premises goods and chattels of the bankrupt amply sufficient to satisfy the landlord's claim for rent. The claim, as filed, must, therefore, be allowed as a claim entitled to priority out of the proceeds of the sale of such goods and chattels. It may be added that this disposition of the case involves no substantial hardship to the other creditors of the bankrupt, as the trustee occupied the demised premises until February 15, 1902, and it is admitted that, should the claim as filed be disallowed, the landlord would be entitled to receive from the trustee compensation for his occupancy of the premises at the same rate as the rent stipulated in the lease.

Let an order be prepared in conformity with this opinion.