In the Matter of GILDA GRADENIGO, INC., t/a Bagatelle/Gilda, Debtor.

**WILMINGTON TRUST COMPANY, Plaintiff,**

v.

GILDA GRADENIGO, INC., t/a Bagatelle/Gilda, Greenville Center Assoc., L.P., Stephen W. Spence, Trustee, Defendants.

Bankruptcy No. 83–360.
Adv. No. 84–6.

United States Bankruptcy Court, D. Delaware.

Oct. 8, 1987.

Noel C. Burnham, Wilmington, Del., for plaintiff.

Daniel H. Krapf, Wilmington, Del., for Greenville Center Assoc., L.P./defendant.

Edwin A. Tos, Wilmington, Del., for debtor/defendant.

**MEMORANDUM OPINION AND ORDER**

HELEN S. BALICK, Bankruptcy Judge.

Following extensive discovery, Wilmington Trust Company on November 26, 1985, filed a motion for summary judgment on its complaint filed January 23, 1984 seeking lien enforcement. The gist of the complaint is a violation of 11 U.S.C. § 363 in that proceeds of inventory subject to WTC's security interest were paid to Defendant/Greenville Center Associates, L.P. as payment of rent in accordance with a settlement reached December 5, 1983 during trial of Greenville's motion for relief from stay. (M–83–20, Doc. # 6). That trial occurred during the Chapter 11 case initiated by Gilda Gradenigo, Inc., t/a Bagatelle/Gilda, defendant/debtor on October 13, 1983. On January 4, 1984, Gilda voluntarily converted its case to one under Chapter 7. The U.S. Trustee appointed the defendant Stephen Spence as interim trustee on January 5, 1984 to serve as trustee in the absence of an election at the 341 meeting.

The facts gleaned from admissions, supporting affidavits and court records in the case file (83–360) are as follows:

At the time Gilda filed its Chapter 11 case, it operated a retail women's apparel store in the Greenville Center, 3801 Kennett Pike, Greenville, Delaware. It was in possession of Suites E–115 and E–110 under a lease and rider with Greenville Center, Inc., dated respectively December 11, 1979 and September 29, 1981. The defendant Greenville Center Associates purchased the Greenville Center from Greenville Center, Inc. As a part of the purchase transaction, leases for units (suites) in the Center were transferred to the defendant.

On June 13, 1980, Gilda borrowed $25,000 from WTC. To secure payment of the note evidencing the loan, Gilda executed two security agreements. One gave WTC a security interest in "all machinery, equip-

ment, furniture and fixtures now owned and to be acquired wherever located, any accessions thereto and proceeds thereof." The other covered "all inventory, raw materials, work in process, accounts receivable and contract rights now owned and hereafter acquired wherever located, any accessions thereto." (See Claim # 6, Claim # 31). These interests were perfected by the filing of financing statements with the Recorder of Deeds of New Castle County and the Secretary of State on June 16 and June 18, 1980. In order to induce WTC to loan money to Gilda, Greenville Center, Inc. executed a "Landlord's Waiver" on June 13, 1980 whereby it waived its right to distraint and levy for rent under the lease as well as any other claims due from the tenant to the landlord pursuant to the lease with respect to all items in which WTC had been granted a security interest as set forth in the attached Exhibit A. (Appendix # 1). The language in the Exhibit generally tracks the language of the financing statements which is slightly broader than that of the security agreement.

By the Fall of 1983, Gilda was in default under the terms of its lease in monthly rental payments and its pro rata share of common area maintenance, insurance fees and real estate taxes. Defendant Greenville brought an action in the Delaware Justice of the Peace Court to evict Gilda and to distrain upon personal property in the leased premises. A levy was made September 14, 1983. On September 21, the JP Court entered an order in favor of Greenville for possession and a money judgment totaling $9,804. On September 23, Greenville and Gilda entered into a stipulation under which Gilda was to remain in possession to sell the distrained goods in the ordinary course of business so as to generate funds to satisfy Greenville's claim. Gilda failed to satisfy the payment obligation as agreed and in accordance with the stipulation, Greenville on October 12 requested the JP Court to proceed with the distress sale. Gilda filed her bankruptcy case the next day thereby activating the automatic stay provisions of 11 U.S.C. § 362(a).

On October 31 Greenville moved for relief from stay to proceed with the state court action to obtain possession of the leased premises. The motion was contested and settled at trial on December 5, as previously noted. (Stipulation and Order, Appendix 2).

WTC filed its proof of claim as a secured creditor in the amount of $5,975.34 on November 21. Copies of the security agreements, landlord's waiver and perfection documentation were attached. WTC also wrote to Gilda's attorney on November 18 and 30 advising of WTC's security interests and proposing a means of adequately protecting its interest that would enable Gilda to use cash collateral. (Burnham Affidavit—Attachment to Doc. # 33).

Despite this notification, WTC was not told of Greenville's pending motion nor of the settlement reached between Greenville and Gilda on December 5 under which proceeds of inventory were paid to Greenville. Neither Gilda nor Greenville brought to the court's attention that WTC was claiming a security interest in, among other things, the inventory and proceeds.

On December 8, Gilda filed an objection to WTC's claim attacking the validity of WTC's security interest. On December 9 the court advised Gilda's attorney that the objection would not be scheduled for hearing inasmuch as the reason stated required an adversary proceeding under BR 3007 and 7001(2). Gilda did nothing further with respect to the objection, nor did it either receive WTC's consent or request court authorization to use WTC's collateral.

WTC asks for an order directing (1) Gilda and Greenville to forward to it all funds transferred by Gilda to Greenville; (2) Gilda to forward to it all proceeds of sale of property of the bankrupt estate of Gilda in which WTC has a security interest; (3) Gilda to account to WTC for all property and proceeds thereof in which WTC has a security interest, and (4) Gilda and the Trustee to refrain from making any further transfer of assets of the bankrupt estate in which WTC has a security interest. Greenville and the Trustee answered

WTC's complaint but Gilda did not respond or otherwise plead.

All facts necessary to resolve the initial question of whether Greenville, as Gilda's landlord, or WTC, as the holder of a security interest, is entitled to the funds generated by Gilda from the sale of inventory subsequent to December 5 are present.

Gilda's failure to pursue any objections to WTC's proof of claim # 6, as amended by claim # 31, leaves WTC with an allowed claim of $5,975.34. Thus, the first step in this analysis is the existence or non-existence of WTC's security interest in inventory and its proceeds. Although Gilda had listed WTC as an unsecured creditor in its schedules, it knew or should have known that WTC was the holder of a security interest in a major portion of its assets. Furthermore, Greenville cannot claim reliance on this incorrect listing. By the time Gilda and Greenville reached settlement on December 5, each had ample opportunity to apprise themselves of the extent of WTC's security interest.

In accordance with 6 *Del. C.* § 9–401(1)(a) and (b), WTC had perfected its security interest by filing financing statements with the Recorder of Deeds of New Castle County and the Secretary of State in June 1980. Those statements reflected, among other things, inventory and its proceeds as collateral for WTC's loan to Gilda. Thus, as to other creditors, it is clear that WTC maintained a fully perfected security interest.

Moreover, before Greenville's motion went to trial, WTC had filed with the court and served on Gilda its proof of claim as a creditor holding security interests. Although the face of the proof makes no reference to inventory and proceeds, there is attached copies of two security agreements, financing statement, filing receipts and landlord's waiver. One security agreement, the financing statement and landlord's waiver all reveal WTC's security interest in inventory and its proceeds. In addition, Greenville had in its own records a copy of the landlord's waiver with its attached Exhibit A reflecting WTC's security interest in inventory and proceeds.

■ Despite WTC's security interest, Greenville contends it has a priority for the collection of rent under 25 *Del. C.* §§ 6301 and 6501. The priority of a landlord's lien over any of a tenants' other creditors, including secured creditors, has been recognized in bankruptcy proceedings, *In re Mitchell,* 116 F. 87 (D.Del.1902), but Greenville's priority was lost by the waiver signed June 13, 1980 by Greenville Center, Inc., its predecessor in interest. Paragraph 5 of the waiver evidences the intent to bind not only the parties but also successors and assigns. Further, by the purchase transaction, Greenville assumed the rights under the leases that were then vested in the previous owner and those rights were limited by the waiver. Thus, WTC is entitled to the proceeds from sale of inventory by virtue of its secured position. However, Greenville further contends that administrative rent is properly payable from the proceeds of inventory subject to WTC's security interest by virtue of 11 U.S.C. § 506(c).

Section 506(c) permits a debtor-in-possession to recover reasonable and necessary costs and expenses of preserving or disposing of a secured creditor's collateral. To warrant a recovery, there must be a showing that the funds were expended primarily for the benefit of the creditor sought to be charged and that the creditor directly benefited from the expenditure. *In re Flagstaff Foodservice Corp.,* 10 CBC 2d 1309, 739 F.2d 1309 (2d Cir.1984). None of the defendants counterclaimed or crossclaimed, the objection to WTC's claim was not pursued and in a subsequent action (M–84–3) WTC obtained a default judgment on its request for relief from stay to take possession of inventory in the hands of the trustee. Thus, the issues raised by this argument are not properly before the court.

■ In conclusion, it is clear that on December 5 when Gilda and Greenville agreed to the use of WTC's collateral, inventory and its proceeds, for payment of post-petition rental, Gilda had been put on notice by WTC of its interest in reaching an agreement on use of cash collateral. Under 11 U.S.C. § 363(c)(1) Gilda could sell

inventory in the ordinary course of business without notice and hearing. However, the proceeds of that inventory are cash collateral and cannot be used absent consent of each entity having an interest in it; or, after notice and hearing, the court authorized its use. 11 U.S.C. § 363(a) and (c)(2)(A) and (B). Neither of these contingencies were met. Further, both Greenville and Gilda had not only constructive notice but also actual notice of WTC's security interest.

Greenville asserts that it would be prejudiced if WTC's motion for summary judgment were to be granted because the parties disagree as to the amount Greenville actually received under the December 5 order. Since there is disagreement as to a material fact, the court will not consider that argument and will schedule the matter for hearing on that issue alone. Otherwise, WTC is entitled to judgment against Gilda as a matter of law. BR 7054, 7055, 7056. It is entitled to partial summary judgment against Greenville.

The events of which WTC complains occurred before conversion of the case to a Chapter 7. The Trustee cannot be held liable for a transaction over which he had no control or responsibility and the complaint as to him must be dismissed.

## APPENDIX 1

### LANDLORD'S WAIVER

Greenville Center, Inc. (herein "Landlord") has entered into a certain Lease Agreement (the "Lease"), dated *12-11-79*, 1979, with Gilda Gradenigo, Inc. T/A Bagatelle (herein "Tenant") demising certain store premises in Building "E", Greenville Center, New Castle County, Delaware, more fully described in the Lease.

In order to induce WILMINGTON TRUST COMPANY (herein "Lender") to advance monies to Tenant for the acquisition and use of the items of property hereinafter set forth, as well as in consideration of the sum of ONE DOLLAR ($1.00), receipt of which is hereby acknowledged, Landlord, Tenant and Lender, intending to be legally bound hereby, agree as follows:

1. Landlord hereby waives any and all right to distrain or levy for rent under the Lease as well as any other claims or demands on account of any debt or obligation due from the Tenant to the Landlord pursuant to the Lease with respect to the items of furniture, fixtures, equipment, inventory and other property set forth on Exhibit "A", attached hereto and made a part hereof, located in or upon the aforesaid store premises.

2. This Waiver shall not extend to any item of property installed or placed by the Tenant upon the aforesaid store premises demised pursuant to the Lease, unless such item of property is specifically set forth herein, nor shall such Waiver extend to the equity, if any, of the Tenant in any of said items.

3. Lender will not attempt to exercise its rights pursuant to any security agreement provided that either Landlord, or any party claiming under Landlord: (a) shall make the payments required to be made to Lender pursuant to any loan/note, or (b) at Landlord's option, offers to purchase such items of property for the unpaid balance of the purchase price less any interest, service, late, or other similar charges. Tenant expressly authorizes Landlord, upon Tenant's default pursuant to Lease, to take possession of such items of property listed herein and to make such payments to Lender; upon making such payments, Tenant and Lender hereby agree that Landlord shall be subrogated to Lender's rights pursuant to the aforesaid security agreement and Lender shall do nothing to impair such rights and shall permit Landlord to proceed in Lender's name, if necessary to endorse the same.

4. Lender expressly agrees that it shall be fully liable for any damage to the aforesaid store premises or the building of which the said premises are a part, arising out of the exercise of its rights pursuant to said security agreement.

5. This Waiver shall be binding upon Landlord, Tenant and Lender, and their respective personal representatives, successors and assigns, it being understood and agreed that the foregoing shall not be construed to permit any assignment, subletting, alienation, pledge or other transfer of the Lease or the said premises, except as expressly permitted in the Lease or in any security agreement entered into between the parties.

6. Anything herein contained to contrary notwithstanding, this waiver shall remain in full force and effect only so long as Wilmington Trust Company, its successors or assigns, has a perfected security interest in the items set forth in Exhibit "A" attached hereto.

IN WITNESS WHEREOF, the undersigned have caused this Waiver to be duly executed this 13th day of June , 1980.

Landlord: GREENVILLE CENTER, INC. —

By: *Arthur McGeye Jr*

Tenant: GILDA GRADENIGO, INC.
T/A BAGATELLE

By *Gilda T Standit*

Lender: WILMINGTON TRUST COMPANY

By: *[signature]*

---

## APPENDIX 2

### STIPULATION AND ORDER

IT IS HEREBY STIPULATED by and between counsel for the parties, subject to the approval of the court, as follows:

1. The motion of Greenville Center Associates, L.P. ("Greenville Center") for relief from the automatic stay is hereby granted in the following respects: Possession of the rental units, being Suites Nos. E–110 and E–115 at Greenville Center, Greenville, Delaware, (the "Property") is given to Greenville Center, subject to other terms and conditions set forth in this stipulation.

2. Debtor shall vacate the Property on or before January 2, 1984. Debtor, at its expense, shall remove from the Property the items listed on Schedule A (and no other items) and shall perform the repairs listed on Schedule A. The Property shall be considered finally vacated only when such removal and repairs have been completed.

3. Debtor shall pay rent for the two suites at the rate of $65.00 per day, pay-

able weekly in advance on Monday. ($455./week) Rent shall be payable by check delivered to the office of Greenville Center by no later than 10:00 a.m. 1st week due by 3:00 p.m. 12/8/83

4. Debtors will pay the sum of $1,317.00, representing rental for the period November 16, 1983 through December 4, 1983, inclusive. This is payable: 25% on 12/12/83, 25% on 12/19/83, and 50% on 12/27/83.

5. If the property has not been completely vacated by January 2, 1984, the daily rental rate shall double. For this purpose, completely vacating the suite includes removal of all carpeting and other trade fixtures; repair of all damage; removal of all debris and trash and all of tenant's possessions; completion of items on Schedule A.

6. Debtor's obligation are secured by the mortgage on the Stawickis' residence.

MORRIS, JAMES, HITCHENS & WILLIAMS
/s/ Daniel H. Krapf
Daniel H. Krapf
Twelfth and Market Streets
Post Office Box 2306
Wilmington, DE 19899
Attorney for Greenville Center Associates, L.P.

/s/ Eric Doroshow
Eric Doroshow
The Legal Clinics of Doroshow & Pasquale
1202 Kirkwood Highway
Wilmington, DE 19805
Attorney for Debtor

/S/ Gilda M. Stawicki
Gilda M. Stawicki

SO ORDERED THIS 5th day of December, 1983.

/s/ Helen S. Balick
Bankruptcy Judge

## Schedule A

broken window pane replaced with Pella window unit

carpet on floor and walls removed

fabric on ceiling removed

repaint or replace pink/purple door to white

close off entries between E-110 and E-115. Board.

remove lighting fixtures and trade fixtures

removal of debris and trash

repair damage caused by removal of foregoing or below

restore window which was colored, if any