Merrimack,
Feb. 1, 1910.

### ST. PAUL'S CHURCH *v.* CONCORD.

A building used in connection with a church for the observance of religious services may be a house of public worship, within the meaning of the statute exempting such property from taxation.

A house of public worship is not taxable merely because it is used sometimes for secular purposes when not needed for the religious exercises to which it is primarily devoted, nor because it is occasionally and temporarily occupied for entertainments by parties who pay for the privilege.

PETITION, for abatement of taxes assessed as of April 1, 1908, upon real estate of the plaintiffs situate in Concord and known as the Roger E. Foster Memorial Parish House.   Transferred from the April term, 1909, of the superior court by *Stone,* J.

The premises in question were conveyed to the Wardens and Vestrymen of St. Paul's Church, in trust for the use and benefit of St. Paul's Church.   They consist of a lot of land and a brick building of two stories and a basement.   The basement contains a dining-room, kitchen, and serving-room.   The first floor contains a coat-room, a hall fitted with benches seating about 250 persons, with kneeling-boards, a rack containing hymnals and prayer-books, a stage equipped with lectern, kneeling-stool, and other ecclesiastical furniture, and also having a drop-curtain, and a room beside the stage used as a vesting-room for the clergy, or as a dressing-room for persons taking part in entertainments.   The second story contains rooms used for meetings of various parochial organiza-

tions and for Sunday school class rooms, and a large choir room, used for choir practice. There are also toilet rooms on the second floor and in the basement, and furnace and fuel rooms in the basement.

It is agreed that so far as the taxability of the property depends upon the use made of the premises, the question shall be determined by its use in the year preceding April 1, 1908. During that year there were held in the hall on the first floor about forty services on Friday evenings, conducted by a clergyman and consisting of the regular service of evening prayer of the Episcopal Church, sometimes with and sometimes without a sermon or address. On about forty Sunday mornings, the Sunday school of St. Paul's parish was held in the hall, its sessions being preceded by a children's service of prayer and praise, conducted generally by one of the parish clergy, and in his absence by a layman. After the opening of Sunday school, some of the classes regularly retired to rooms on the second floor, where their sessions were held. Various organizations connected with the church hold their meetings in the Parish House. It is also used for the business and social purposes of the parish. When not otherwise engaged, the hall was to let for hire to reputable parties for such purposes as meetings of societies, lectures, musical recitals, and private dancing parties. The premises are almost immediately in the rear of, but not directly adjoining, the lot on which stands the parish church. Arrangements have been made for connecting the Parish House with the church by a covered walk of awning cloth, which is used on special occasions, when more room is required for the vesting of those who take part in the service than is furnished by the vesting-room connected with the church building.

Upon the above facts, the plaintiffs claim that the premises in question constitute a house of public worship and are exempt from taxation; and the court ruled that the property above described is a house of public worship within the meaning of section 2, chapter 5, Public Statutes, and therefore exempt from taxation. To this ruling the defendants excepted.

*Edward C. Niles* and *Edward K. Woodworth*, for the plaintiffs.

*Edmund S. Cook*, for the defendants.

WALKER, J. "Real estate . . . is liable to be taxed, except houses of public worship." P. S., *c.* 55, *s.* 2. This is a legislative declaration that such buildings are not taxable, or that they are exempt from taxation. Whether an exemption of that

character is constitutional is a question not argued by counsel and not considered in this opinion.

The Parish House is situated near the principal church building and is used in connection with it for the observance of various religious services usually deemed essential in the support and maintenance of public worship. This was the primary purpose of its erection; and so far as that purpose and its observance furnish the test of the character of the house, it cannot be doubted that it is a house of public worship. The principal contention arises upon the assumption that it is a house of public worship, and therefore not taxable under the statute, unless its use and occupation during the year preceding April, 1908, were such that it does not have that character within the meaning of the statute. The court ruled that the facts relating to its use during that period did not show that it had ceased to be a house of public worship as a matter of law. In other words, the question presented is whether it conclusively appears from the facts relating to the use of the building that it falls within the language of the exemption.

It must also be assumed that the Parish House is suitable in its appointments for such religious purposes as the plaintiff, a religious corporation, seeks to promote in the performance of its corporate functions, and that it is primarily devoted to the worship of the Deity and such incidental exercises as are usually connected with, and deemed directly helpful to, the exercise of religious functions, according to the regulations of the Episcopal Church. There is no suggestion that the plaintiff does not use the building for all such religious exercises as it was devoted to, or that its use of it for such purposes is interfered with, or curtailed, by the fact that it is sometimes, and perhaps frequently, used for entertainments of a non-religious character. The building subserves all the religious uses for which it was erected, and it is maintained as a house of public worship, so far as the needs and conveniences of the church require. Its religious use is not rendered less because of its secular use. The plaintiff's occupation of it for the promotion of religion has not in fact been abandoned or diminished in consequence of its temporary use, at times, for secular entertainments. This seems to be conceded.

Counsel for the defendant insists upon what is often called a strict construction of the statute. As taxation is the general rule, it is said that the burden is upon the party claiming that his property is exempt from taxation to establish the fact by clear and convincing proof that the legislature so intended, and that all doubts upon that point must be resolved against its exemption. This general statement of the rule of construction in such cases has often been reiterated and justified upon constitutional grounds

(*Phillips Academy* v. *Exeter*, 58 N. H. 306 ; *Franklin-Street Society* v. *Manchester*, 60 N. H. 342; *Alton Bay Ass'n* v. *Alton*, 69 N. H. 311; *New London* v. *Academy*, 69 N. H. 443 ; *Williams* v. *Park*, 72 N. H. 305 ; *Portsmouth Shoe Co.* v. *Portsmouth*, 74 N. H. 222 ; *Canaan* v. *District*, 74 N. H. 517, 525) ; and while it serves to express a principle governing the court in this jurisdiction when passing upon the question of the intention of the legislature in tax-exemption statutes, it is not so narrow and rigid in its application as to defeat the lawmakers' intention ascertained from all the competent evidence.   Though called a rule, for convenience of expression, it is merely evidence to be weighed; and its weight depends upon its reasonableness, and not alone upon its verbal applicability.   In other words, it is the duty of the court to ascertain and carry out the intention of the legislature; and that fact is to be found, not by the mechanical or formal application of words and phrases, but by the exercise of reason and judgment. If the literal significance of statutory language, as applied to the facts of a particular case, makes the meaning absurd, strange, or inexplicable, it cannot be adopted as the only test of the legislative purpose, without either imputing to the legislature a senseless design, or judicially evading the duty of ascertaining the intent.   If the so-called rule of strict construction, as applied to statutes exempting certain property from taxation, is so strictly applied as to render the exempting language so narrow and restricted as to defeat the apparent legislative purpose, it is clear that too much sacredness is attached to a mere rule, and that it should be either abrogated or applied with more liberality and reason.

In this case it is urged that the legislature meant by the phrase " houses of public worship " buildings that were exclusively used for that purpose, and that houses of public worship that are sometimes used for secular purposes were not included within the exemption.   In *New London* v. *Academy*, *supra*, it was held, following *Phillips Academy* v. *Exeter*, *supra*, that the exemption in the statute of " seminaries of learning " meant buildings devoted exclusively to the uses of schools.   If it is conceded that the exclusiveness of the use is the criterion for determining the question of the taxability of the Parish House, it would be puerile and absurd to say that a single occupation of it during the year designated in the case, for a lecture or a popular concert, would deprive it of its exclusiveness as a house of public worship and render it taxable under the statute.   While that result would be in accordance with a rule of very strict construction, it would be so opposed to the evident objects of such legislation and to the universal understanding of the practical meaning of language as to com-

mend itself to no one; hence the court ought not to be bound by it. Nor do the cases cited use the word in such a narrow sense. In those cases the buildings claimed to be exempt were devoted in part to, and were used for, purposes not contemplated in the statute. They were permanently used for those purposes and not for school purposes; and in that sense they did not have the exclusive character which would entitle them to the exempting privilege. If it had appeared that they were sometimes used for public entertainments when not required for educational purposes, but that ordinarily they were entirely used by the teachers and scholars, a different result might have been reached in those cases. They are authorities for the proposition that a permanent diversion of the use of school buildings from the direct educational purposes to which they were devoted deprives them of that exclusive character as school buildings which is essential to their exemption from taxation. When in the Exeter case it is said "the use intended as a ground of exemption was exclusive," there was no intention of announcing a rule that the strictest verbal meaning should be given to the word "exclusive." Its significance there is to be determined in view of the facts; and when so viewed, it is not absurd or dogmatic. It is apparent, therefore, that some degree of liberality bounded by reasonableness must be indulged in determining whether the use made of the Parish House for religious purposes has been so far exclusive that it is still a house of public worship and exempted from taxation as such. A reasonable construction must be given to the statute. Scholastic strictness of definition cannot he adopted if it prevents that result.

The statute exempting "houses of public worship" was first passed in 1842 (R. S., *c.* 39, *s.* 2), and that expression has been retained in all subsequent revisions. The meaning originally attached to it was not a technical one. It was evidently intended to include such buildings as were then usually and popularly termed churches and used for the encouragement of religion and piety, which in the bill of rights (*art.* 6) it is declared "will give the best and greatest security to government." Argument is unnecessary to show that the purpose was to promote religious worship, and not to discourage it by limiting the exemption to the very small number of church buildings in the state in which no secular entertainments were permitted. Indeed, it is probable that there were none of that exclusive character. They were used for social, literary, educational, and political gatherings, when not actually occupied for public worship. They accommodated the public in many ways which may be deemed secular, without abridging their use for religious purposes. "In earlier times in

this state, and in all the New England states, the church—commonly called the meeting house—was customarily used for town-meetings, lectures, concerts, temperance meetings, political addresses, and for other like special occasions; and no one ever supposed that such use made the meeting house liable to taxation. In the country towns the like use still prevails. In view of such general use, it is not to be supposed that the legislature intended, by any language it has used, to make all such church buildings taxable." *First Unitarian Society* v. *Hartford*, 66 Conn. 368, 375. The statute referred to in that case exempted from taxation "buildings exclusively occupied as churches," and the court declined to carry the doctrine of exclusiveness to the extent of defeating the general legislative purpose.

If the original purpose of the legislature was to exempt houses of public worship as then used and enjoyed by the public, there is no evidence it has since changed its purpose and adopted a more restricted definition of the same statutory language. The custom of using church buildings for public meetings not directly connected with church work has not ceased. It still exists, especially in the smaller towns, and its observance is not uncommon in the large towns and cities. In view of this almost universal custom which has coexisted with the statute in question for more than sixty years, nothing but the most pedantic reasoning could disclose any evidence that a house of public worship is not a house of public worship, within the present legislative meaning, if exercises of a secular nature are occasionally permitted in it. If the house serves all the religious purposes for which it was designed and is not appropriated to other uses in the sense of a substantial exclusion of the religious use from any part of it, no reason is apparent why it does not promote all the uses which the legislature had in mind when it was exempted as a house of public worship. In this view, it is exclusively used as such a house. So long as the church organization occupies it for such public services of a religious character as it deems useful and desirable and as the building is adapted to subserve, to the exclusion of all secular uses, it is used exclusively as a house of public worship. When it is not required or needed for religious services, and when its use for other purposes would not curtail or interfere with the full and free accomplishment of its original and essential design, its remaining unoccupied and useless would not seem to be a necessary requisite for its exemption from taxation. If at such times it is used for some innocent entertainment of a secular nature, would it be reasonable to hold that it thereby lost its exclusively religious character? Is there any evidence that such was the intention of the legislature? We fail to discover it.

The Parish House, it appears, is used by the church for all the purposes which it was designed to promote, and which are sufficient to entitle it to exemption from the tax burden as a house of public worship. The church activities in it are not lessened or interfered with by its occasional use for entertainments. If it were not so used, the time of its non-occupation for useful purposes would be greater, while its actual occupation for distinctly religious uses would not be increased. There is no evidence of a practical abandonment of the house to secular uses, or of a willingness on the part of the church to limit or diminish its proper use of it. *Old South Society* v. *Boston*, 127 Mass. 378. The secular uses are subordinate and temporary—not principal or permanent. The essential character of the house remains unchanged.

It is urged that the fact that the plaintiff receives pay for the use of the audience room for entertainments brings the property within the taxable class. But that circumstance is not of controlling effect. It is the use made of the property that determines its character under the statute. If the Parish House were given over to the occupation of a theatre company, to the exclusion of all church services, it could not be said that it was a house of public worship within the meaning of the statute, because the use would be exclusively secular; and this would be so whether the plaintiff received a large, a little, or no rent for the occupation. While it may be true that church property leased to and permanently occupied by others for business purposes would not be exempt (*Y. M. C. A.* v. *Keene*, 70 N. H. 223; *Portsmouth Shoe Co.* v. *Portsmouth*, 74 N. H. 222), it does not follow that an occasional and temporary occupation by third parties who pay for the privilege deprives the property of its nontaxable character. If there is no substantial abandonment of the property by the church to uses other than those it was designed to promote, the receipt of pay for its temporary use, when not needed or desired for religious services, is merely incidental and subsidiary. In the absence of evidence that the plaintiff has ceased to occupy the Parish House for all the religious uses it is adapted to, or that it has permanently relinquished it or any part of it to non-religious uses, an occasional fee received by the church, for a lecture of an hour's duration delivered in it, would clearly be insufficient evidence that in such a case the legislature intended to exclude it from the exemption to which it would otherwise be entitled. Such an interpretation would ascribe to the legislature an extremely narrow and frivolous purpose. The income incidentally derived by the plaintiff from the occasional use of the Parish House for non-religious

gatherings, when not otherwise used or needed, does not show that it is devoted to business purposes, or that it is maintained as a commercial establishment.

As the religious uses which the Parish House serves are sufficient to render it a house of public worship, and as its use for other purposes as disclosed by the case is not sufficient to deprive it of that character, it is exempt from taxation, and the tax upon it must be abated.

*Exception overruled.*

BINGHAM and PEASLEE, JJ., did not sit: the others concurred.