UNITED STATES *v.* RT. REV. MSGR. JOHN F. WHEALON (No. 5068)*

---
*C.A.D. 791.

United States Court of Customs and Patent Appeals,
February 13, 1962

*William H. Orrick, Jr.*, Assistant Attorney General (*Richard E. FitzGibbon*, Chief, Customs Section, and *Daniel I. Auster*, trial attorney, of counsel) for the United States.

*Metzenbaum, Gaines, Schwartz, Krupansky, Finley and Stern*, and *Robert B. Krupansky*, for appellee.

[Oral argument November 16, 1961, by Mr. Auster ; submitted on brief by appellee]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

KIRKPATRICK, Judge, delivered the opinion of the court:

This is an appeal by the United States from the judgment of the Customs Court, Third Division, C.D. 2228, holding that 10 stained glass windows imported are free of duty by virtue of paragraph 1810 of the Tariff Act of 1930, which provides for free entry of "* * * stained or painted glass windows which are works of art when imported to be used in houses of worship, valued at $15 or more per square foot, * * *." The collector ruled that the imported windows were not to be used in a house of worship and classified them as stained glass windows, not specially provided for, subject to duty of 30 percent ad valorem, under paragraph 230(a) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade. The Customs Court sustained the importer's protest.

The sole issue before us on this appeal is whether the place in which the windows have been installed is a house of worship within the meaning of paragraph 1810, supra. It has been stipulated that the windows are works of art and that the value of the windows is in excess of $15.00 per square foot.

The complete importation consists of 20 stained glass windows to be used in the Borromeo Seminary at Wickliffe, Ohio, an institution in the Roman Catholic Archdiocese of Cleveland for the training of candidates for the priesthood. Ten of the windows were installed in the library of the institution, which the court held was not a house of worship (a ruling not appealed from), and we are not concerned with that part of the importation.

The ten windows involved in this appeal were installed in an auditorium called the "Aula Magna," located in the main college building of the seminary—one of several buildings which include a

---

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

high school building, a dormitory and a large field house for athletic sports. The Aula Magna is a large rectangular room having fixed seats which accommodate 230 persons. There are two side aisles and a center aisle. At one end is a structure with a raised platform and proscenium arch, having the appearance of the stage of a modern theatre. A portable lectern usually stands on the floor of the room in front of the stage. In addition to the Aula Magna, the main college building houses the library, a chapel, classrooms, and "all of the departments, * * * rooms, etc., of the college part" of the seminary. This would seem to include dormitory rooms and a dining room.

In order to arrive at once at the issue in the case, we will assume that a house of worship in the tariff sense need not be an entire building but may be a room within a building, and we agree with the court below and with the Supreme Court of New Hampshire in *St. Paul's Church* v. *City of Concord*, 75 A. 531 (N.H. 1910), that ▬ it is not necessary to the concept of a house of worship that the building or room be used exclusively for religious services and that if at times it is used for some innocent entertainment of a secular nature, it does not thereby lose its character as a house of worship. Thus narrowing the task before us, we proceed to consider the interpretation of the phrase "houses of worship" adopted by the court below. The court said, "It [a house of worship] is, in our opinion, a place under the control of an established faith or sect where, under the auspices of that faith or sect, groups of persons regularly meet to join in acts of worship usual to the tenets and practices of the faith or sect." This statement omits what we consider to be a controlling consideration in determining whether a place (in the sense of a room or structure) is a house of worship, namely, that it must be *primarily* intended to be used for acts of worship.

The learned court did not, however, overlook the point. She said, "We have no doubt that Congress intended to include within the expression 'houses of worship' not only those edifices that are usually called 'churches,' which are of course 'houses of worship,' but also other places the *primary* use of which is for holding regular worship services of a faith or sect. The Aula Magna is such a place." (Emphasis supplied.) It is the last statement that we find ourselves unable to agree with.

The statement is, of course, a fact finding and, if it had been based on disputed evidence or testimony of witnesses whose credibility is in issue, we would hesitate to disturb it, but the evidence is undisputed, consisting entirely of the testimony of Bishop (then Msgr.) Whealon, and his credibility is beyond question. ▬ An appellate court is qualified to draw ultimate inferences and conclusions from uncontroverted evidence adduced in the lower court and

is not bound to accept fact findings when they rest on inferences drawn by the trial court from such undisputed evidence.

In this case it seems quite clear that the Borromeo Seminary taken as a whole is not a house of worship in the tariff sense. The court said, "The Seminary is an institution for professional religious education, in this case, the education of priests. Like theological seminaries of many faiths, its professional education trains those who are to lead others in worship according to the tenets and practices of that faith. The distinguishing function of seminaries is the *education* of rabbis, ministers, priests, or other leaders of worship." While the term "worship" is susceptible of almost as many varying meanings as there are creeds and faiths, we have a phrase, not a word, to interpret. We must determine what Congress meant when it used the term "houses of worship," and we agree with the Customs Court that the common meaning controls and that the entire physical plant of an institution devoted to the education of young men to qualify them for the learned profession of divinity is not what was intended by the phrase in the Tariff Act.

Turning now to the purpose which the Aula Magna was intended to serve and the uses to which it is put, it appears that only two forms of activity of any kind which can be called religious take place in it. The entire student body is regularly assembled there and a member of the faculty, or sometimes a lecturer unconnected with the seminary, addresses the students. This is preceded and followed by a prayer in which all present join.

As to the prayer, there can be no dispute that it is an act of worship. However, if the only thing needed to constitute a house of worship is a prayer regularly recited then we might have to hold that the dining rooms of many secular boarding schools, the classrooms and auditoriums of public schools in a number of States and even the chambers of Congress and many of the State legislatures are houses of worship, and most courtrooms inasmuch as "God save the United States and This Honorable Court" is a prayer.

The precise nature of the discourses which are given to the students does not appear very fully or very clearly from the testimony. Bishop Whealon described them as constituting "the scheduled instruction given to them [the students] each day by a member of the faculty" and stated that, "the typical instruction concerns morality" and gave his opinion that it is equivalent to a sermon. He was careful to point out, however, that the discourses were not described as sermons by those who use the Aula Magna, the term used being "spiritual readings."

In addition to this regular series of instructions, be they ethical, exegetical or doctrinal in character, the Aula Magna was frequently put to other uses. "[I]f a visiting lecturer comes in, we naturally

bring him there, and have many talks to the students there. Also, if the students are putting on a play, they make use of this room as the place for the putting on of their little skit, or their play."

It is to be noted that the Mass is never celebrated in this room, there being a chapel in the building. There is no altar and no pulpit, and the lectern is merely a movable piece of furniture which is brought out or removed as the occasion requires.

Clearly, Bishop Whealon's opinion that the Aula Magna is a house of worship is based upon the very broadest conception of what constitutes worship, a view which unquestionably is broader than the common meaning of the word. He said it "is to be understood as an act by which man shows recognition of his creator; * * *. It likewise consists of just thinking, or meditating about God, as I read recently concerning the Quaker religion * * *." We find ourselves unable to accept this meaning of "worship" in construing the Tariff Act. In his opinion, "the entire institution, aside from those sections that are just devoted to recreation, constitutes a house of worship." The court below did not accept it and specifically ruled that the library "used for study and for meditation" was not a house of worship.

The legislative history of section 1810 and its predecessors, including its reenactment by Congress subsequent to the decision of this court in *Perry, Ryer & Co.* v. *United States*, 6 Ct. Cust. Appls. 201, T.D. 35462, strongly relied upon by the appellant, sheds only the faintest light upon the intent of Congress in adopting the phrase. One might hazard a guess that the phrase was adopted in order to avoid enumerating the long list of structures which, while not termed churches, are the equivalent of churches in ordinary speech, such as synagogues, meeting houses, etc. We do not, however, rely upon the legislative history of the section for our decision.

We hold that [4] the scheduled instruction of young men studying for the profession of divinity under the circumstances appearing in this record is not an act of worship and that the Aula Magna of the Borromeo Seminary in which it is carried on is not primarily intended or used as a house of worship in the tariff sense and does not become one by reason of the fact that the instruction is preceded and followed by prayer.