Mr. Hoopes, the landlord, is entitled to claim a full year's rent, or $3600.00, out of the proceeds of the execution sale.

An order will be signed in accordance with this opinion.

IN RE PETITIONS OF HENRY HOOPES, ET AL., TO DRAW MONEY OUT OF COURT.

(*March* 31, 1939.)

LAYTON, C. J., RODNEY, SPEAKMAN and TERRY, J. J., sitting.

*Franklin Bockson* for petitioner, Hoopes.

*E. Ennalls Berl* and *David F. Anderson* (of Ward and Gray) for petitioner, Industrial Trust Company.

Supreme Court, No. 1, October Term, 1938.

LAYTON, C. J., delivering the opinion of the Court:

The execution creditor contends that by the express language of the statute, the landlord's statutory preference is limited to rent growing due during the year next follow-

ing the date of the levy or seizure; and, therefore, any money received by the landlord, from whatever source derived, if applied by him as and for rent subsequent to the seizure, must be deducted from the amount of the statutory claim.

This contention must be examined in the light of the policy of the statute as it has frequently been interpreted. The statute is an ancient one. It was enacted at a time when, perhaps, property owners as a class possessed an undue influence in governmental matters. But, the Court is not concerned with the wisdom of the statute, although the view is not without support that its provisions are equitable and proper as tending in the end to promote the interests of both tenant and their creditors by removing the inducement to landlords to require onerous conditions for their security. *Austin v. O'Reilly, Fed. Cas. No.* 665; *In re Mitchell, (D. C.)* 116 *F.* 87

The purpose of the statute was to benefit landlords, not execution creditors. *Ege v. Ege,* 5 *Watts (Pa.)* 134. Judge Woolley in his authoritative work on Delaware practice, speaks of the statutory preference as being "in line of the law's indulgence to landlords." 2 *Woolley Del. Pr.,* § 1075. In commenting on the statute, Judge Bradford observed that in Delaware "a landlord's claim for rent growing due is * * * highly favored, and is carefully guarded under the statutes and decisions". *In re Mitchell, supra* [116 *F.* 93]. In *McIntire v. Barkley,* 5 *Houst.* 145, the Court said that the words of the statute are general and comprehensive and without qualification or exception; and in *Hopkins v. Simpson,* 3 *Houst.* 90, it was said that the landlord is amply and abundantly provided with all the means and remedies necessary to secure and preserve his preference "as against any and all execution creditors of his tenant in any event whatsoever".

So, in *Shuster v. Robinson,* 3 *Harr.* 50, it was held that if goods be moved on demised premises *after* execution delivered to the Sheriff but *before* actual levy, they are subject to rent. In *Biddle v. Biddle,* 3 *Harr.* 539, the rule was laid down that if the goods of a tenant be taken in execution *after* a distress levied, the landlord may complete his distress, and *also* claim the accruing year's rent in preference to the execution creditor. In *Ford v. Clewell,* 9 *Houst.* 179, 31 *A.* 715, the ruling was that the landlord's right to have the proceeds of the sale of the personal property of his tenant applied to the rent is superior to the lien of a chattel mortgage which was given before the beginning of the tenancy and before the goods were moved on to the demised premises, a chattel mortgage not being an execution process. In *McIntire v. Bradley, supra,* it appeared that the landlord bought in the unexpired term of his tenant at a Sheriff's sale of his goods taken in execution at the suit of another. The unexpired term of the lease was eight months. It was contended that by the sale the term had merged in the reversion, and that the most the landlord could claim was the equivalent of the rent for the three preceding months which had accrued up to that time. The Sheriff paid the landlord the equivalent of the whole rent for the entire year, and the Court, in charging the jury saw that the statute applied to and embraced the case before them. The case was definitely followed and approved in the relatively recent case of *Schwartzman v. Gould,* 5 *W. W. Harr.* (35 *Del.*) 150, 160 *A.* 207, and the case of *Gause v. Richardson,* 4 *Houst.* 222, holding to the contrary, was overruled.

 Reading the statute both literally and in the light of its manifest purpose as judicially declared, there is small reason to suppose that the Legislature meant that the preference of one year's rent growing due came into existence on the day of the levy or seizure and, therefore, is limited to rent growing due during the year ensuing.

The statute does not so declare, although, superficially read, it may seem to do so. The significance of the phrase,"growing due at the time of said seizure" is not to be found in an arrangement of words. Read as a whole, and having in mind the intent and purpose of the Legislature, the phrase is expressive only of a condition that, to perfect the preferential claim, a tenancy must exist at the time of the seizure, out of which tenancy rent is growing due. If it could be said that the seizure creates the claim, there would be force in the argument advanced; but it is well settled that the claim grows out of the lease and attaches at the beginning of the tenancy. It does not depend on the levy or seizure, but exists independently of the institution of any proceeding for its enforcement. 16 *R. C. L.* 988. As was said in the *Mitchell case, supra,* "It is inadmissible to assume that a seizure of the goods and chattels of the tenant by virtue of such process creates the landlord's claim for rent growing due. That claim grows out of the lease; but by virtue of *Section* 60 such claim immediately matures and becomes payable as against and in preference to such process."

The preferential claim, therefore, has its origin in the lease. It is perfected by the seizure. Rent accrues from day to day. The payment of a periodical installment discharges the rent for that period, but rent continues to grow due, and there is never a moment of time during the term when it can be said that rent is not growing due. It was not the purpose of the statute to mark the day of the seizure as the initial date of a preference year, and to limit the preference to the rent growing due during that year. What the statute does declare is, that in the proceeds of the sale of those goods which stood as security for rent, the landlord shall have a preference to the extent of one year's rent growing due, if at the time of the seizure a tenancy was in existence by virtue of which rent was growing due. The fact that rent has been paid by the tenant subsequent to the seizure from

sources other than the goods seized does not diminish the preference which is payable from the proceeds of the sale of those goods.

Manifestly, it would be unjust if, having pursued his claim to a seizure of goods, the execution creditor should be deprived of the fruits of his enterprise by the subsequent creation of a tenancy, for, in such case, at the time of the seizure, there would be no rent growing due; and, likewise, it would be an absurdity to allow a preference in the distribution of the proceeds of sale if, when the seizure was made, a tenancy no longer existed although the goods were still on the premises. Neither of these situations would be within the equity of the words of the statute. *In Re Ellegood et al.,* 1 *W. W. Harr.* (31 *Del.*) 529, 116 *A.* 127, the tenancy had determined when the seizure was made, and whatever was there said to the effect that the purpose of the statute was not to allow the preference in all circumstances and conditions was entirely appropriate to the facts.

Contrariwise, if the beneficial intent of the statute is to be effectuated, it would be unjust to permit the preference to be diminished or extinguished by the execution creditor's own act. Executions are issued at the will of judgment creditors. The statutes require no notice whatever to landlords of levies made on chattels on the demised premises. The Sheriff is not compelled to take into his actual possession the property levied on; and seldom does except at the direction of the execution creditor. A levy maintains its priority over subsequent levies for three years, and they are frequently made, not as a means of enforcing immediate payment of, but as a species of security for, the debt. The landlord may know nothing of the levy; and it is not unusual for a tenant to pay his rent periodically although his goods on the demised premises have been levied upon. Moreover, the execution creditor has, in general, absolute control of

the time of the sale of goods levied on. He may order the sale to be made at once, and, in such case, it will not be denied that the landlord is entitled to the statutory preference of one year's rent growing due, if, in fact, the term yet to run is of sufficient length. But, the execution creditor, as it suits his purpose or inclination, may delay the sale; and, allowing the contention here pressed, if the delay be for so long as one year, the landlord all the while receiving his rent, the preferential right of the landlord to receive from the proceeds of the sale of those things which formed his security for rent growing due is wholly destroyed by offsetting the amount of rent received, not from the value of the goods, but from other sources, against the amount of the preference claim. If the statute is to be read in such manner as to permit this result, it no longer can be said that "the landlord's claim for rent growing due is highly favored and carefully guarded under the statutes and decisions".

In *Schwartzman v. Gould, supra,* it appeared that the Sheriff had sold under execution process goods of a tenant on demised premises. At the date of the sale there was no rent in arrear. The lease had, at the time of the sale, about twenty months to run. Under the law there must have been an interval of at least thirty days between the seizure and the sale, so that, as the rent was paid to the day of sale, some part of it had been paid for the period of time between the levy and the sale. The Sheriff paid to the landlord one year's rent growing due. The suit was on the Sheriff's bond, and it was, of course, the duty of the Court to determine the correctness of the Sheriff's distribution of the proceeds of sale. The fact that rent had been paid from the time of the levy to the time of the sale was not noticed by the Court.

*Bennett's Estate v. Sprowl,* (3 *Cir.*) 42 *F.* 2d 33, 35, is an illustration of the correctness of the conclusion that the language of the statute "growing due, at the time of said

seizure", was not intended to mark a limitation as to time of accrual. In that case, at the time of the tenant's bankruptcy, there were due his landlord various sums of money for rent covering a period of more than one year. The statute of Pennsylvania provided that "goods and chattels being in or upon any * * * lands * * * which are or shall be demised for life or years, * * * and liable to the distress * * * shall be liable for payment of any sums of money due for rent *at the time of taking such* goods in execution: Provided, that such rent shall not exceed one year's rent". 68 *P. S. Pa.,* § 321. It was contended by the receiver in bankruptcy that the lien given by the statute is limited to rent falling due during the last year preceding the bankruptcy, and the referee and the District Court so held. The landlord contended that although the quantum of the lien was restricted to one year's rent, yet the lien covered all rent due, no matter when falling due, so long as it did not exceed one year's rent. The tenant's bankruptcy, resulting in the trustee's taking possession of the goods and chattels, was a "taking in execution" within the statute. The Circuit Court of Appeals, after noting the language of the statute, "of any sums of money due for rent at the time of taking such goods in execution", said:

> "Standing alone, there is no limitation as to time of accrual or quantum of amount. The only limitation is that it is for rent due, viz, 'any sum of money *due* for rent at the time of taking such goods in execution.' We are therefore justified in holding that the purpose of the statute was to give the landlord a lien for his rent, no matter when it had become due, so long as his rent was due when the goods were taken in execution, but that the lien should be limited in money to the measure of one year's rent."

In *Ege v. Ege, supra,* with respect to a landlord's claim, under the same statute, for a whole year's rent due, the Court said, "This he is entitled to without regard to the time the lease commenced, or the time of the sheriff's sale". See, also, *Parker's Appeal,* 5 *Pa.* 390, 391.

The authorities cited by the plaintiff in error are not convincing, even if they may be regarded as applicable. With respect to the contention that the statute should be strictly construed as one in derogation of the common law, it may be said that the question is not that the statute be given a strict or a liberal construction. The duty of the Court is to give to the words of the statute a reasonable and sensible meaning having in mind its intent and purpose.

A statement made by the Court in charging the jury in the case of *State v. Vandever et al.*, 2 *Harr.* 397, is seized upon by the plaintiff in error in support of its contention. There, an execution creditor of a tenant sued the Sheriff on his official recognizance for the recovery of money alleged to have been paid a landlord of the execution debtor by the Sheriff. The landlord had distrained for rent for the year 1934. It was contended that this rent or some part of it had been paid. Moreover, it was claimed that the rent was a grain or crop share rent, in which case, the crop, under the statute was sold subject to the rent, and the execution creditor was entitled to the whole proceeds of the sale. It was in this connection that the Court charged the jury, that if the rent of 1934, or any part of it, had been paid by the tenant to the landlord, the payment by the Sheriff to the landlord of the whole year's rent was not authorized, but would be subject to a deduction to the extent of the tenant's payment. It will be noted that the statement of the Court was with respect to the rent for the year 1934 for which the landlord had made distraint. Obviously, if a part of this rent had been paid the Sheriff could not pay to the landlord the whole year's rent. It is manifest that the Court had in mind rent in arrear, and not rent growing due; and the case cannot be cited as an authority for the proposition that the statute establishes a preference year for rent growing due beginning at the date of the seizure,

and that rent not paid out of the proceeds of sale of the goods levied upon is, nevertheless, to be deducted from the amount of the statutory preference.

*Hopkins v. Simpson, supra, Rosenblum v. Uber,* (3 *Cir.*) 256 *F.* 584, *and General Tire & Rubber Co. v. General Tire & Sales Co.,* 93 *Pa. Super.* 173, are of that class of case where, the landlord, having received from the tenant's goods levied upon, or in bankruptcy, from his assets, a part of his rent, is denied preference to the extent of the amount thus received.

The conclusion is, that the defendant in error is entitled to receive from the proceeds of the sale of the goods and chattels on the demised premises sold under the execution process, the sum of $3600.00, being one year's rent growing due.

The judgment of the Court below is sustained.