NEW CASTLE COUNTY EDUCATION ASSOCIATION and Diane L. Dunmon, Plaintiffs,

v.

BOARD OF EDUCATION OF the NEW CASTLE COUNTY SCHOOL DISTRICT, Defendant,

v.

DELAWARE ASSOCIATION OF SCHOOL ADMINISTRATORS, INC., et al., Additional Defendants.

Court of Chancery of Delaware, New Castle County.

Submitted June 30, 1980.

Decided July 28, 1980.

Sheldon N. Sandler, of Bader, Dorsey & Kreshtook, Wilmington, for plaintiffs.

David H. Williams, of Morris, James, Hitchens & Williams, Wilmington, for defendant Board of Education of the New Castle County School District.

Samuel R. Russell, of Biggs & Battaglia, Wilmington, for additional defendants.

BROWN, Vice Chancellor.

This is an action for declaratory judgment. The defendants have counterclaimed against the plaintiffs and one of the defendants has crossclaimed against the other.

All parties have moved for summary judgment, there being no dispute as to any material fact. In essence, the dispute is one between teacher, school administrators and their school board.

The plaintiffs are the New Castle County Education Association (hereafter "the Association") and Diane L. Dunmon, a teacher in the New Castle County School District. The Association is the exclusive bargaining representative for the teachers in the School District. The defendant Board of Education of the New Castle County School District (hereafter "the Board") is the party against which the action was initially filed. Subsequently, Delaware Association of School Administrators, Inc. and certain individual administrators of the School District (hereafter "the Administrators") were added as defendants by agreement of counsel. The factual situation giving rise to the problem presented is as follows.

As a result of declining enrollment within the New Castle County School District, the Board, during the spring of 1980, gave notice to 109 administrators employed by the School District that their contracts would not be renewed for the forthcoming 1980–1981 school year. Subsequently, 55 of these administrators were rehired, and three others either retired or resigned. Of the remaining 51 administrators, nine elected to be assigned as teachers with the district. This right of a school administrator to be assigned as a teacher is expressly authorized by statute, the precise language of which will be dealt with hereafter.

The decline in student enrollment also required the Board to terminate the services of teachers as well as administrative personnel. By virtue of the collective bargaining agreement between the Board and the Association, a reduction in force (or "riffing" as it is commonly called) is based upon seniority, i. e., a teacher with the greater number of years of service being given consideration over a teacher with fewer years of service. The collective bargaining agreement provides that "[s]eniority shall be calculated as the length of continuous service in the District."

The Board was thus faced with the prospect of having terminated administrators enter the "pool" of teachers from which selection would have to be made based upon years of service in the District so as to determine which of them would fill the available teaching positions for the forthcoming school year. There being no explicit statutory guidelines to cover this situation, the Board, by resolution, made a "policy decision" that those terminated administrators who elected to be assigned as teachers would be considered to "have seniority as teachers commensurate with the term of their previous employment as either teachers or administrators" in the School District. In other words, the Board has decided that years of service as an administrator within the School District shall be considered as the same as years of service as a teacher for the purpose of determining whether a terminated administrator who exercises his statutory option to be assigned as a teacher is entitled, based on seniority, to fill available teaching positions as opposed to other teachers within the "pool." For example, under the Board's resolution one who had served five years as a teacher followed by five years as an administrator would be credited with ten years of service, thus placing him ahead of one who had taught for nine years, but behind a teacher with 11 years of service. Both the Association and the defendant Administrators challenge the propriety of this policy decision.

The legislative history giving rise to this dispute is as follows. In 1955 a new statute was enacted under 14 *Del.C.* Ch. 14. It was entitled "Procedures for the Termination of Services of Professional Employees." It is commonly referred to as the act which gave tenure rights to public school teachers. At § 1401 of that statute "teacher" was defined to mean and include

" . . . all persons certificated to teach and who are employed within the free public school system of this State as teachers, instructors, principals, superintendents, supervisors, or in any other educational position for which the employing board requires certification."

In 1969, by 57 *Del.L.* Ch. 263, this definition of a teacher in 14 *Del.C.* § 1401 was amended to read as follows:

"(2) Teacher means and includes all persons certified to teach and who are employed by a Board as a teacher. It *shall not include* persons employed as assistant principal, principal, supervisor, administrative assistant, director, assistant superintendent, or superintendent; *except that any such person who has completed three years of service in the State, two years of which shall have been in the employ of the same Board, may at his option elect and he shall be granted the right to be assigned as a teacher in the employ of the same Board.*" (Emphasis added.)[1]

At the same time, 57 *Del.L.* Ch. 263 also added a new § 1328 to Title 14 authorizing the same administrative personnel to enter into employment contracts with their employing school boards "for a period of up to five years."[2]

The obvious effect of this amendment was to remove the designated administrative personnel from the protection against termination offered to teachers under the tenure statutes. In exchange, administrative personnel were given two things, namely, the right to negotiate and enter into employment contracts for periods up to five years, and, in addition, the option (or right) to elect to be assigned as a teacher within the school district provided the person had put in the required years of service as an administrator. The amended statutes, however, do not in specific language address the problem which has caused this litigation.

It is against this backdrop of undisputed fact and law that all of the parties seek declaratory relief. The Association seeks a declaration that time spent as an administrator may not be included when determining the seniority status of terminated administrators who have chosen to be assigned as teachers and it seeks thereon a permanent injunction against the Board so as to prevent it from carrying out its announced policy in this regard. The Board asks for a judgment declaring that administrators do have seniority commensurate with their prior service as both teacher and administrator. The Administrators seek a declaration somewhere in between, namely, that an administrator choosing reassignment as a teacher is entitled to be considered for a teaching position without regard to seniority and that thereafter his combined service as a teacher and administrator is to be counted in determining his seniority status as a teacher. The contentions of the parties are set forth hereafter.

The Association charges that the Board's decision to give credit for administrative service violates 14 *Del.C.* § 1401(2). It takes the position that the option given to an administrator under the aforesaid definition of a teacher says nothing about counting administrative experience in determining entitlement to a subsequent teaching assignment. Rather, the Association argues that the statute does nothing more than give an administrator the option to return to the teaching ranks which, presumably, he voluntarily chose to leave. As such, argues the Association, it would entitle him at best to retain credit for the years of service, if any, that he had accumulated while actually teaching. For example, it is the Association's position that if one had taught for five years and had then gone on to work as an administrator for five years, he should be entitled, upon his decision to return to teaching, to be credited with only five years service as a teacher for purposes of determining teacher seniority.

In taking this view, the Association relies on the general principle that when an em-

---

1. As the statute presently appears in the Delaware Code, the words "and he shall be granted the right" to have been omitted from the definition of a "Teacher" found at 14 *Del.C.* § 1401(2). Presumably, this was done by the codifiers on the assumption that the phrase was redundant with the phrase "may at his option elect." At least the parties have made this assumption for the purposes of argument.

2. This authorization is now found with 14 *Del.C.* § 1329.

ployee quits his job he loses his entitlement to accrued seniority and other benefits. Specifically, it relies on the statement of Judge Schwartz in *Lawrence v. New Castle County Vocational Technical School District*, Civil Action No. 78–232 (D.Del. June 1, 1979) to the effect that

> "... it appears to be an almost incontestable principle of labor law that a voluntary termination of employment by an employee results in a forfeiture of prior benefits, absent some specific contractual agreement providing otherwise."

From this beginning, the Association proceeds to argue its view of the fairness of the Board's policy decision. It suggests that teachers voluntarily elect to go into the administrative field because administrative positions generally bring higher pay and additional benefits. It says that by so doing they voluntarily remove themselves from the competition for teaching jobs. They elect to move up in their profession. Accordingly, they should not be permitted sometime later to elect to return to teaching, reenter the field with the same benefits as though they had never left and thereby displace one who has more actual years of teaching experience than they do. It says that to the extent that the Board's policy decision permits this, it is wrong.

The defendant Administrators, on the other hand, take a completely opposite view. They say that the 1969 amendment to § 1401(2) gives a school administrator an absolute right (regardless of what the Code codifiers might have determined to be redundant language) to be assigned as a teacher if he so elects. They say that in this respect the statute is clear and unambiguous, and that consequently years of service, as either a teacher or administrator, has nothing to do with it. In other words, they argue that once an administrator elects to return to teaching, for whatever his reasons, his employing school board is obligated to give him a teaching position, regardless of his years of service and regardless of whether a teacher with more years of teaching experience must be removed so as to make room for him. They contend that this was the right given to administrators in exchange for taking from them the tenure rights given to teachers under 14 *Del.C.* Ch. 14, i. e., termination of employment only for cause, the right to a hearing, the right to appellate review, etc. Moreover, the Administrators argue that the entire position of the Association is based upon the seniority provisions of the collective bargaining agreement which it has with the Board, to which school administrators are not even parties.

The response of the Association to this latter point is worthy of mention. It agrees that school administrators are not bound by the collective bargaining agreement. But it points out that the Association is the exclusive bargaining agent for all teachers in the School District and on that basis it argues that once an administrator exercises his statutory option to be assigned as a teacher he becomes a part of the bargaining unit and, as a consequence, is bound by the seniority provisions of the collective bargaining agreement. But to this the defendant Administrators reply that under 14 *Del.C.* § 4013 no provision of a collective bargaining agreement can override any statutory provision in Title 14, and therefore, since they contend that 14 *Del.C.* § 1401(2) gives them an absolute right to be assigned as a teacher without regard to seniority, they say that the bargaining agreement between the Association and the Board cannot control their right to switch from administrator to teacher even if they do become part of the teachers exclusive bargaining unit as a result.

Needless to say, this whole situation is very confusing. It is, however, subject to logical dissection.

The beginning point is an examination of the effect of § 1401(2), as amended, and in the process it must be kept in mind that in enacting legislation it is presumed that the General Assembly did not intend an unreasonable or unworkable result. *Stiftel v. Carper*, Del.Ch., 378 A.2d 124 (1977), *affirmed*, Del.Supr., 384 A.2d 1 (1977); *E. I. duPont De Nemours & Co. v. Clark*, 32 Del.Ch. 527, 88 A.2d 436 (1952). This princi-

ple, coupled with the clear language of the statute, reveals a flaw in the positions of both the Association and the Administrators.

The statute gives a qualifying administrator the "option to elect to be *assigned* as a teacher." It does not say that he has an absolute right to become a teacher in the school district at any time that he, in his judgment, so decides. Since it gives him only the right to be "assigned" as a teacher, the statute presupposes that some other authority will do the assigning. That authority, quite obviously, has to be his employing school board. And the assignment of teachers has to involve both need and availability of personnel. Thus, the basis on which he will be assigned to a teaching position is left, as it should be, to the school board. If the interpretation of the Administrators was the correct one, it would mean that an administrator would have the right, in effect, to "bump" a teacher already in place, thus bringing about a change in teacher assignments over which the school board would have no control. In such a situation, the school board would merely have the ministerial function of clearing out a spot for him regardless of its impact on the existing teaching structure, and in that sense the school board would not be making the teaching assignment. It does not seem reasonable to think that the General Assembly intended to hamstring an employing school district in this one isolated instance while giving it decisional authority in all other areas of the employment of personnel.

The fact that the Board here may be otherwise bound under the collective bargaining agreement to make teacher assignments on a seniority basis is, of course, another matter. To the extent that the Board is so restricted in its otherwise clear right to employ such teaching personnel as it sees fit, it has chosen to do so on its own, through the means of collective bargaining, which the statutes apparently permit it to do. 14 *Del.C.* Ch. 14. To that extent, it has made the policy decision as to teachers already in its employ. That would not be the case under the Administrator's argument.

Moreover, the weakness of the Administrators' argument is revealed when it is viewed prospectively. They argue that the statute gives an administrator the immediate right to a teaching position, regardless of seniority. Yet they must concede that thereafter his seniority for the purpose of holding the position can be determined by his combined years of service as an administrator and teacher. In effect, then, their argument boils down to the premise that the option given by § 1401(2) provides an administrator with teaching job-security for only one year, since in the following year he could be terminated for reasons of declining enrollment in favor of a teacher with more years of service. In other words, it is an argument that an administrator has a right to work as a teacher, regardless of service, in one year, but not the next; that is to say, service time does not count for the purpose of getting the job, but it does count for purposes of holding it thereafter. This would seem to be an unreasonable result which should not be attributed to legislative purpose.

On the other hand, § 1401(2) is silent as to any seniority rights that an administrator might have upon his determination to elect to be assigned as a teacher. In fact, the seniority rights on which the Association relies derive from its collective bargaining agreement with the Board and not from the statute. Therefore, it is difficult to comprehend how the Association can argue that the policy established by the Board in its resolution violates § 1401(2). Clearly, it does not.

Moreover, the principle of law relied on by the Association, literally applied, would mean that an administrator who elects to return to teaching would be entitled to no credit whatever for previous teaching service for the purpose of determining his seniority status. This is so because he would have forfeited all benefits he previously accumulated as a teacher as a result of his voluntary decision to give up teaching in favor of another line of work unless they were specifically preserved by contract or

otherwise, and there is no indication of any such saving features in the case presented here.

Thus, what the Association is saying is that it feels, in its view, that the better policy to have been adopted by the Board would have been to give credit to an administrator only for the years he had spent teaching and not for the time spent in administrative service. It obviously relies on no legal authority in taking this position. At least it has put forth none. And certainly there is no basis for saying that it is required by statute. It is simply the Association's determination of what the proper policy should be viewed from the standpoint of the teachers it represents. This brings us to the crux of the matter.

As the Board points out by way of justification for its decision, 14 *Del.C.* § 1403 reads as follows:

"In each reorganized school district there shall be a school board which shall have the authority to administer and to supervise the free public schools of the reorganized school district and which shall have the authority to determine policy and adopt rules and regulations for the general administration and supervision of the free public schools of the reorganized school district. Such administration, supervision and policy shall be conducted and formulated in accordance with Delaware law and the policies, rules and regulations of the State Board of Education."

Moreover, and in keeping with the above statute, Article 10:10 of its collective bargaining agreement with the Association reads as follows:

"Except as limited by this Agreement, the New Castle County School Board, on its own behalf and on behalf of the citizens of the District hereby retains and reserves unto itself, all powers, rights, authority, duties, and responsibilities conferred upon and vested in it by the laws and the Constitution of the State of Delaware and of the United States, and including the right to administer and to supervise the schools of the District and

shall have the authority to determine policy and adopt rules and regulations for the general administration and supervision of the schools of the District. Such administration, supervision and policy shall be conducted and formulated in accordance with Delaware law and the policies, rules and regulations of the State Board of Education. Additionally, nothing contained herein shall be considered to deny or restrict the Board of its rights, responsibilities, and authorities provided by applicable law[s]."

Thus, both by statute and by the collective bargaining agreement the Board is left free to formulate its own policies for the administration of the School District so long as they do not conflict with the law or with policies already agreed upon in the bargaining agreement. Its decision under attack in this case conflicts with neither.

Moreover, 14 *Del.C.* § 1305, which deals with the basic salary schedules for all school employees, makes no express distinction between teaching and administrative personnel. At the same time, it establishes salary grades based upon years of experience for all such employees without making any distinction between years of teaching experience and years of administrative experience. See also 14 *Del.C.* § 1312 which provides that as to "a teacher, principal or superintendent, or other administrative employee" the term "years of experience," for the purpose of determining salary under § 1305, "means years of service in any public school." Also, as noted earlier herein, the collective bargaining agreement between the Association and the Board provides that seniority is to be calculated "as the length of continuous service in the District" without distinguishing between teaching service and any other type of service. The Association says that this was meant to refer to teaching service only since the collective bargaining agreement deals only with teachers represented by the Association, and this may well be true. But by the same token "continuous service in the District" is not expressly limited by the bargaining agreement to continuous "teach-

ing service," and at the time that the agreement was entered into it was clear under § 1401(2) that an administrator with the required years of service in the School District had the option to be assigned as a teacher.

The Board does not rely upon any of the foregoing, as I understand its position, as giving it either a statutory or contractual right to adopt its resolution giving an administrator credit for time spent both as a teacher and an administrator. It says, however, that such factors do lend support to the conclusion that its decision is not unreasonable, and that it reflects an effort to reach a fair median ground between the positions advocated by both the Association and the Administrators. I tend to agree.

■ In summary, I conclude that § 1401(2) is clear in its terms, that it does not require the Board to absolutely give the nine electing administrators a teaching position within the School District regardless of all else, that it does leave the Board free to "assign" them teaching positions based upon such standards as to the Board seems fair with regard to the other teaching personnel within the School District, that the decision of the Board does not violate its collective bargaining agreement with the Association, that the decision of the Board in allowing credit for time spent as an administrator does not violate § 1401(2), and that its decision, as reflected in its resolution, to assign a seniority status to terminated administrators based on their service within the School District in both teaching and administrative capacities is not inherently unfair or arbitrary in view of the reasons given for that decision.

■ These conclusions require that the summary judgment motions of the Association and the Administrators be denied. At the same time, I cannot grant the summary judgment motion of the Board. This is because the counterclaim of the Board asks the Court to declare as a matter of law that school administrators electing to be assigned as teachers under 14 *Del.C.* § 1401(2) have seniority commensurate with their prior service as both teacher and administra-

tor. I can make no such finding because such a result is not mandated by the law. Under the facts here, teacher seniority within the School District derives from the collective bargaining agreement and not from the law, and the decision of the Board, which I am here upholding, is by its own argument a matter of administrative policy born out of the particular situation with which it was faced. Thus there is no basis for entering a declaratory judgment in the manner sought by the Board.

At the same time, since this decision ends the matter, I feel that a final order should be entered. I suggest that the order recite that all motions for summary judgment, as made, are denied and, in addition, that judgment be entered in favor of the Board on the complaint and on the cross-claim of the Administrators, that judgment be entered in favor of the Administrators on the complaint, and that judgment be entered in favor of the Association on the counterclaims of the Board and the Administrators. A form of order to this effect may be presented.